# Exhibit 1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.



# COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

EDWARD BRENNAN JR

vs.

FSD PHARMA INC

NO.  2021-03756

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Bucks County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:  Stephanie Grey, Esq., ID: 324294

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**  ☐ Yes   ☒ No

**MDJ Appeal**  ☐ Yes   ☒ No

**Money Damages Requested** ☒

**Commencement of Action**:

Complaint

**Amount in Controversy**:

More than $50,000

## Case Type and Code

Contract:

Employment Dispute: Other

**Other:**

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**KLEHR HARRISON**
**HARVEY BRANZBURG LLP**
BY:   Jonathan S. Krause, Esq.
       Matthew J. McHugh, Esq.
       Stephanie M. Grey, Esq.
1835 Market Street
Suite 1400
Philadelphia, PA 19103
Phone: (215) 569-2700
jkrause@klehr.com
mmchugh@klehr.com
sgrey@klehr.com

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| EDWARD BRENNAN, JR. and HUMA QAMAR, | : | COURT OF COMMON PLEAS BUCKS COUNTY |
| Plaintiffs, | : | |
| | : | NO. _____ |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| FSD PHARMA INC. | : | |
| First Canadian Place | | |
| 100 King Street West, | : | |
| Suite 3400 | | |
| Toronto A6 M5X 1A4 | : | |
|     and | | |
| FSD BIOSCIENCES INC. | : | |
| 3494 Progress Drive | | |
| Bensalem, PA 19020 | : | |
| | : | |
| Defendants. | | |

## NOTICE TO DEFEND

      You have been sued in court.  If you wish to defend against the claims set forth in the following pages you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defense or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief request by the plaintiff.  You may lose money or property or other rights important to you.

       YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone: (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**KLEHR HARRISON**
**HARVEY BRANZBURG LLP**
BY:    Jonathan S. Krause, Esq.
         Matthew J. McHugh, Esq.
         Stephanie M. Grey, Esq.
1835 Market Street
Suite 1400
Philadelphia, PA 19103
Phone: (215) 569-2700
jkrause@klehr.com
mmchugh@klehr.com
sgrey@klehr.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| EDWARD BRENNAN, JR. and HUMA QAMAR, : | COURT OF COMMON PLEAS BUCKS COUNTY |
| Plaintiffs, : | NO. _____ |
| v. : | JURY TRIAL DEMANDED |
| FSD PHARMA INC. : First Canadian Place 100 King Street West, : Suite 3400 Toronto A6 M5X 1A4 : and FSD BIOSCIENCES INC. : 3494 Progress Drive Bensalem, PA 19020 : | |
| Defendants. : | |

## COMPLAINT

Plaintiffs Edward Brennan, Jr. ("Brennan") and Huma Qamar ("Qamar") (collectively, "Plaintiffs"), by and through their undersigned counsel, Klehr Harrison Harvey Branzburg LLP, hereby file this Complaint against Defendants FSD Pharma Inc. ("FSD") and FSD Biosciences Inc. ("FSD Biosciences") (collectively, "Defendants"), seeking relief, and in support thereof aver as follows:

3

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

1.       This dispute arose out of Defendants' unlawful and improper withholding of Plaintiffs' severance payments.  While in the midst of a proxy fight, Defendants induced Plaintiffs into continuing employment and accepting employment agreements by promising severance benefits that Defendants now refuse to provide.  Plaintiffs detrimentally relied on these misrepresentations and agreed to terms of employment that Defendants now have no intention of upholding.  Following the resolution of the proxy fight, Plaintiffs ceased their employment with Defendants and sought to recover their severance pay, under the exact circumstances that the parties had agreed severance payments would be owed.  Defendants refused to comply with the terms of their employment agreements and honor the severance provisions.  Plaintiffs now turn to this Court seeking recourse for the damages that they have incurred as result of Defendants' misconduct.

## PARTIES

2.       Plaintiff Edward Brennan, Jr. was the former Chief Medical Officer ("CMO") of Defendants.  Brennan is a citizen of the Commonwealth of Pennsylvania, and resides at 682 Malin Road, Newtown Square, Pennsylvania 19073.

3.       Plaintiff Huma Qamar was the former Senior Vice President of Defendants and Head of the R&D Program.  Qamar is a citizen of the Commonwealth of Pennsylvania, and resides at 506 Bismark Way, King of Prussia, Pennsylvania 19406.

4.       FSD, through its wholly-owned subsidiary FSD Biosciences, is a pharmaceutical R&D company incorporated in Ontario, Canada with its principal address of First Canadian Place, 100 King Street West, Suite 3400, Toronto, Ontario, Canada.  FSD's registered agent for service of process is CT Corporation System, 28 Liberty Street, New York, New York 10005.  FSD

4

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

regularly transacts business in the Commonwealth of Pennsylvania, including at the address of FSD Biosciences in Bensalem, Pennsylvania.

5.      FSD Biosciences, is a wholly-owned subsidiary of Defendant FSD. FSD Biosciences is incorporated in Delaware with its principal place of business located at 3494 Progress Drive, Bensalem, Pennsylvania 19020.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the Defendants under 42 Pa.C.S.A. § 5301, 42 PA.C.S.A. § 5308, and 42 Pa.C.S.A. § 5322 because this action arises out of business that Defendants transacted within the Commonwealth of Pennsylvania, contracts which Defendants entered into within the Commonwealth of Pennsylvania, and harm Defendants caused within Pennsylvania.

7.      Venue is proper in this county pursuant to 231 Pa. Code § 2179(a)(1) and (2) as Defendant FSD Biosciences' principal place of business is located in Bucks County, Pennsylvania and Defendant FSD regularly conducts business in Bucks County, Pennsylvania.

**FACTUAL BACKGROUND**

I.      **FSD's Business Operations**

8.      FSD is a publicly traded holding company and licensed producer of cannabis in Canada.  Through its wholly-owned subsidiary, FSD BioSciences, FSD focuses on biotech pharmaceutical, including R&D and clinical development of synthetic cannabinoid based treatments of certain disease conditions.

9.      FSD is based in Toronto, but during the relevant time period FSD's senior management, executives, and FSD BioSciences' staff were located in Bensalem, Pennsylvania.

5

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

10.     Until May 14, 2021, Raza Bokhari ("Bokhari") served as Executive Chairman of the Board of Directors and Chief Executive Officer ("CEO") for FSD.  (Declaration of Raza Bokhari ("Decl.") at ¶2, attached hereto as Exhibit 1).

11.     On January 2, 2020, Defendants appointed Donal Carroll ("Carroll") as Chief Financial Officer ("CFO") of FSD, and he served in that position until his removal on May 5, 2021. *Id.* at ¶4.

12.      In his role as CFO, Carroll reported directly to Bokhari.  Bokhari would act within the scope of his authority in directing Carroll to perform certain job duties, including memorializing the terms of agreements reached between Defendants and employees. *Id.* at ¶5.

13.     At all relevant times, Bokhari and Carroll were duly authorized officers, agents, and representatives of Defendants engaged in their business and acting within the scope of their employment and authority with Defendants. *Id.* at ¶6.

## II.     A Struggle for Control of FSD Begins

14.     On January 26, 2021, FSD filed a Form 6-K, which provided a corporate update. The January 26, 2021 Form 6-K announced that FSD received a request for a special meeting by certain shareholders who held in excess of 5.1% of the Company's voting shares.   These shareholders included Zeeshan Saeed ("Saeed"), who, at the time, was the former President of FSD and Anthony Durkacz ("Durkacz"), who was a Director of FSD.

15.     The January 26, 2021 Form 6-K further disclosed that Saeed and Durkacz sought to reduce the size of FSD's Board of Directors (the "Board") to five and to replace six of the incumbent directors including, Bokhari, who was FSD's CEO and Chairman of the Board at that time.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

16.     On April 23, 2021, FSD filed proxy materials and sent a letter to shareholders related to the annual and special meeting scheduled for May 14, 2021 in Philadelphia, Pennsylvania.

### III.   Defendants Promote Brennan and Qamar

#### a.   Brennan's Employment Agreement

17.     On or about May 30, 2019, FSD hired Brennan as the President of FSD Biosciences.

18.     In connection with Brennan's hire, Defendants entered into an Employment Agreement with Brennan.  A true and correct copy of the draft Brennan's original Employment Agreement is attached as Exhibit 2.[1]  As discussed herein, that Employment Agreement was amended via verbal modification several times throughout Brennan's employment.

19.     At all times relevant to these underlying allegations, Brennan was based out of and worked in Defendants' office located in Bensalem, Pennsylvania.

20.     On February 7, 2021, Bokhari and Brennan met to discuss the status of the FSD's R&D efforts as well as Brennan's future with Defendants.  Decl. at ¶7.

21.     Brennan had tremendous concern about the uncertainty caused by the Board proxy fight, and whether he should remain employed with Defendants given the uncertainty.

22.     During the meeting, Brennan conveyed that he needed certain assurances given the uncertainty caused by the proxy fight initiated by certain dissident directors and shareholders. Decl. at ¶8.

23.     During the meeting, in partial response to Brennan's concerns, as well as a reflection of the tremendous value Brennan provided to Defendants, Bokhari represented that Brennan would be promoted to Chief Medical Officer ("CMO") of FSD. *Id.* at ¶9.

---

[1] Brennan cannot locate a copy of the executed Employment Agreement in his personal possession and no longer has access to the copy that would be maintained on Defendants' systems.

24.     As a result of this promotion, Bokhari represented that Brennan's base salary would increase to $350,000. *Id.* at ¶10.

25.     Bokhari also represented to Brennan, to address his concern about the proxy fight and the future of Defendants and to incentivize him to remain employed by Defendants, that his Employment Agreement would be modified – in addition to other changes – to provide that Brennan be entitled to severance in the event that there was a change in control of the Board and executive leadership of Defendants as a result of the proxy fight. *Id.* at ¶11.

26.     Brennan relied upon these representations regarding the changes to his Employment Agreement in choosing to remain employed by Defendants.

27.     Subsequent to this meeting, Bokhari and Brennan met in Bensalem and spoke with Carroll, via phone.  During this meeting, Bokhari informed Carroll of Brennan's change in position and what provisions were to be included in Brennan's revised employment agreement due to Brennan's new position as CMO. *Id.* at ¶12.

28.     Bokhari represented that these provisions included, among other things:

    a.  A severance agreement provision that stated in the event of a change in control of the Board and leadership of Defendants, if Brennan was terminated without cause or resigned, Brennan would have the option to elect severance in the amount of one year's base salary to be issued in a single payment without any notice period ("Brennan Severance Provision");

    b.  Brennan's base salary would increase to $350,000 effective immediately, and retroactive to January 2, 2021;

    c.  Brennan should be compensated $100,000 as a cash bonus for the year 2020;

    d.  Brennan's new title would be CMO; and

8

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

    e.   Any disputes regarding the employment agreement would be adjudicated in Pennsylvania and subject to Pennsylvania law. *Id.* at ¶13.

29.    Bokhari represented that the purpose of the severance provision was to protect Brennan in the event of a change of control of FSD resulting from the upcoming shareholder meeting.

30.    Bokhari instructed Carroll to prepare a written employment agreement memorializing the above provisions, including the Brennan Severance Provision, which was similar to provisions I had authorized and signed in December 2020 for Carroll. *Id.* at ¶14.

31.    Carroll represented that he would prepare a written employment agreement memorializing the above promised provisions, and that he understood that Defendants modified the Employment Agreement with Brennan.

32.    Carroll had no authority to disregard the directions of Bokhari to effectuate changes to the Employment Agreement. Bokhari was acting with the scope of his authority in amending the Employment Agreement as described.

33.    As a result, in reliance on these representations, Brennan accepted the employment offer for the position of CMO, and under these terms, began working as CMO of FSD.

34.    In consideration of these provisions, including the Brennan Severance Provision, Brennan agreed to offer his services for employment as CMO.

35.    Carroll never provided Brennan with a written version of his employment agreement for CMO.

36.    Brennan inquired into the status of the agreement and Carroll informed Brennan that counsel was drafting the agreement.

9

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

37.     The lack of a formal written agreement memorializing certain terms was the usual course of business for Defendants.

38.     In the past, Brennan's Agreement was modified several times, but Brennan never received a written copy of his Agreement memorializing such changes.   Yet all of Defendants' oral representations made to Brennan concerning his employment were effectuated.

39.     For example, when Brennan began working as President of FSD Biosciences his employment agreement contained a 90-day probationary period.  Two weeks into his employment, Bokhari represented that this provision was waived.  Immediately following this representation, the provision was waived from Brennan's Employment Agreement.

40.     In addition, Bokhari represented to Brennan that he would receive certain stock awards that were not provided for in the Employment Agreement.  Brennan never received a written agreement memorializing such stock awards, but Defendants nevertheless provided Brennan with the promised stock award.

41.     In another instance, Bokhari represented to Brennan that Brennan should receive a company car and be reimbursed for any expenses related thereto, although such a benefit was not part of his Employment Agreement.  Subsequent to this representation, Brennan received a company car and FSD reimbursed any expenses despite a lack of written agreement memorializing this benefit.

42.     Moreover, Bokhari represented to Brennan that he would receive a $100,000 bonus, which Brennan received despite having no written agreement to such terms.

43.     Likewise, the modifications to the Employment Agreement agreed to by Defendants and Brennan during Brennan's February 7, 2021 meeting with Bokhari went into effect

10

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

and were treated as binding terms, even though Carroll failed to provide a written agreement despite Bokhari's direction that he do so.

44.     For example, FSD paid Brennan the agreed to salary of $350,000.

45.     Further, FSD promoted Brennan to CMO despite never memorializing the terms in writing. Indeed, Brennan's job duties changed and he ceased working for FSD Biosciences.

46.     FSD represented to the public that Brennan was the company's CMO. For instance, on FSD's website and in FSD's Annual Information Form for the year ended December 31, 2020 filed with the U.S. Securities Exchange Commission, FSD reported Brennan as the company's CMO.

47.     Brennan had no reason to disbelieve that the provisions Defendants promised him related to the Brennan Severance Provisions were excluded from his employment agreement. To the contrary, based on Bokhari's representations and the parties' past course of conduct of verbal modifications to the Agreement, the Employment Agreement was modified through the verbal agreement reached on February 7, 2021.

48.     In reliance on the revised Employment Agreement, Brennan began his employment as CMO and he faithfully, loyally, successfully and satisfactorily performed all duties assigned to him.

49.     Although a written contract was never executed by the parties, the parties nonetheless arrived at an agreement for Brennan's employment, reached a meeting of the minds, and orally agreed to Brennan's severance package, among other things, as Defendants represented to Brennan that such provision would be included in the employment agreement.

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

50.     Although the agreement was not signed by the parties, the parties had a meeting of the minds that the agreement embodies the terms and conditions of Brennan's employment, and it was understood that the employment agreement was in full force and effect between the parties.

51.     Upon information and belief, Carroll deliberately disregarded the explicit direction of Bokhari so that Defendants could subsequently claim, as they presently do, that they owed no severance obligation to Brennan.

52.     Upon information and belief, Carroll deliberately deceived Brennan and Bokhari by misrepresenting that the writing to effectuate the parties' verbal agreement was forthcoming.

53.     Carroll had no authority to attempt to void or not effectuate the agreement reached by Defendants through Bokhari and Brennan.

**b.  Qamar's Employment Agreement**

54.     On January 25, 2021, FSD hired Qamar to be a Senior Director of FSD Biosciences.

55.     In March 2021, Bokhari met with Qamar, in FSD's Bensalem office, during which the two discussed hiring additional staff for the FSD's R&D efforts.   Bokhari also mentioned that Qamar should be the Senior Vice President and Head of the R&D program. *Id.* at ¶15.

56.     Qamar expressed concern in accepting this position due to the upcoming shareholder vote related to the potential change of the Board and executive leadership of Defendants.  Qamar further expressed trepidation about continuing her employment given the uncertainty. *Id.* at ¶16.

57.     In response, Bokhari represented to Qamar that her new employment agreement would contain a severance provision which would protect her in the event of a change of control of Defendants' Board and executive leadership. *Id.* at ¶17.

12

58.     Specifically, Bokhari represented to Qamar that her employment agreement would include a provision that stated in the event of a change in control of the Board and executive leadership of Defendants, if FSD terminated Qamar without cause, or if Qamar resigned, Qamar had the option to elect severance in the amount of year's base salary to be issued in a single payment without a notice period ("Qamar Severance Provision"). *Id.* at ¶18.

59.     Bokhari represented to Qamar that in her position as Senior Vice President of FSD and Head of the R&D Program her base salary would increase to $250,000. *Id.* at ¶19.

60.     Subsequent to this meeting, Bokhari and Qamar met with Carroll via phone. During this meeting Bokhari instructed Carroll to draft an employment agreement for Qamar's new role as Senior Vice President of FSD and Head of the R&D Program. Bokhari further instructed Carroll to include in Qamar's employment agreement provisions for: (i) the Qamar Severance Provision, similar to the provisions I authorized and signed for Carroll in December 2020; and (ii) a base salary of $250,000. *Id.* at ¶20.

61.     Bokhari instructed Carroll to prepare a written contract memorializing the terms Bokhari represented. *Id.* at ¶21.

62.     Carroll had no authority to disregard the directions of Bokhari with respect to an employment agreement for Qamar. Bokhari was acting with the scope of his authority in reaching agreement with Qamar on behalf of Defendants as to the terms of the employment agreement.

63.     As a result, in reliance on these representations, Qamar agreed to continue employment and the position changes agreed upon.

64.     On April 2, 2021, FSD promoted Qamar to Senior Vice President of FSD and Head of the R&D Program. *Id.* at ¶22.

13

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

65.     That same day, Carroll represented to Qamar, via phone, that he was preparing her new employment agreement and would provide her with a copy to review by end of day and that the agreement would reflect the terms verbally agreed to by Defendants and Qamar based on her discussions with Bokhari.

66.     By April 5, 2021, Carroll did not provide a new employment agreement to Qamar.

67.     The following week, Nathan Coyle, FSD's Corporate Controller, sent Qamar a draft of her new employment agreement.  The employment agreement contained not only incorrect information, but also failed to include the provisions Bokahri represented to Qamar and instructed Carroll to include.

68.     In particular, the draft employment agreement contained the incorrect name and salary information.  The draft employment agreement contained no provisions relating to paid time off, dispute processes, or the Qamar Severance Provision.

69.     After several rounds of negotiations, Carroll informed Qamar that she must sign the employment agreement or that her employment would be terminated.

70.     Carroll lacked authority to give this ultimatum to Qamar and did not so do with the knowledge or consent of Bokhari.  To the contrary, Carroll's ultimatum was in defiance of the direction Bokhari gave him with respect to putting in writing the terms of the verbal agreement reached as to Qamar's employment.

71.     Qamar felt that she had no choice but to accede to Carroll's ultimatum or risk losing her job.  Qamar understood that the terms of her verbal agreement with Bokhari still applied.

72.     On April 10, 2021, Qamar executed the employment agreement for her position as Senior Vice President of FSD and Head of the R&D Program (the "Qamar Agreement").  A true and correct copy of the Qamar Agreement is attached here to as Exhibit 3.

Case# 2021-03756-0 - JUDGE# - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

73.     As a result, in reliance on Bokhari's representations, Qamar accepted the employment offer for the position of Senior Vice President of FSD and Head of the R&D Program, under the terms represented by Bokhari, and began working as Senior Vice President of the R&D division.

74.     Although a written contract with all agreed upon terms – including the Severance Provision - was never executed by the parties, the parties nonetheless arrived at an agreement for Qamar's employment, reached a meeting of the minds, and orally agreed to Qamar's severance package.

75.     Although the agreement with all agreed upon terms was not signed by the parties, the parties had a meeting of the minds that the agreement embodies the terms and conditions of Qamar's employment, and it was understood that the employment agreement with the Severance Provision was in full force and effect between the parties.

76.     Upon information and belief, Carroll deliberately disregarded the explicit direction of Bokhari so that Defendants could subsequently claim, as they presently do, that they owed no severance obligation to Qamar.

77.     Upon information and belief, Carroll deliberately deceived Qamar and Bokhari by misrepresenting Qamar's employment would be terminated unless she executed the incomplete Employment Agreement.

78.     Carroll had no authority to attempt to void or not effectuate the agreement reached by Defendants through Bokhari and Qamar.

## IV.     A Change in Control of FSD's Board Occurs

79.     On April 20, 2021, the Board held a meeting during which the Board approved a resolution authorizing Defendants' management and Chairman to determine which key executives

and employees' employment severance agreements were at risk  in an event of change of control

of Defendants' Board and executive leadership.  *Id.* at ¶23.  In a letter dated May 6, 2021, Counsel

for Durkacz summarized the April 20, 2021 Board meeting minutes.  A true and correct copy of

the May 6, 2021 letter is attached hereto as Exhibit 4.

80.     The Board further authorized Defendants' management and Chairman to "enter into

an agreement with such executives and employees to disburse their severance packages to restore

confidence of these executives and employees so they do not abandon their position in advance of

the contested shareholder meeting." Ex. 4, at 2; *see* Decl. at ¶24.

81.     The employees considered critical to FSD and for whom the severance packages

were to be approved for included Brennan, Qamar, Carroll, and Sara May.  Decl. at ¶25.

82.     On May 5, 2021, Carroll was removed from his position as CFO for breach of his

fiduciary duties and on the advice of Defendants' corporate counsel. *Id.* at ¶33.  FSD announced

Nathan Coyle as the interim Chief Financial Officer.

83.     Upon information and belief, FSD terminated Carroll's employment upon learning

that he was assisting Durkacz and Saeed with their attempts at taking over FSD. *See id.*.

84.     As part of Carroll's disregard of his job duties, Carroll refused to effectuate the

verbal agreements with Brennan and Qamar regarding the respective Severance Provisions.

85.     On May 13, 2021, in Philadelphia, a dinner was held the evening before the general

and annual shareholder meeting.  The Board, as well as, FSD's executive and senior management

attended the dinner. Qamar, Brennan, and Bokhari attended this event.  *Id.* at ¶¶27-28.

86.     At the dinner, Qamar informed Bokhari that the Qamar Severance Provision he

represented to her was not included in her employment agreement. Bokhari promised Qamar that

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

he instructed Carroll to include the provision and that the Qamar Severance Provision would be included in her employment agreement. *Id.* at ¶¶29-30.

87.     Bokhari further represented to Qamar that the severance provision was to be included in Qamar's and Brennan's employment agreements as means of protection in the event of a change in control of FSD's leadership.

88.     On May 17, 2021, FSD announced the results of its annual general and special meeting of the shareholders held on May 14, 2021 in Philadelphia.  As a result of the vote, Bokhari was removed from the Board and placed on administrative leave in his position as CEO of FSD, thus triggering the change in control provisions of Brennan's and Qamar's agreements and entitling them to the benefits of their Severance Provisions if they subsequently resigned. *See id.* at ¶31.  Saeed and Durkacz were elected to the Board.

89.     Shortly thereafter, relying upon the terms of the Severance Provision and concerned that Defendants' new leadership had little regard for compliance obligations, Qamar resigned her employment effective May 26, 2021.

90.     Defendants failed to provide Qamar the required severance under the Qamar Severance Provision and in breach of the Qamar Employment Agreement.

91.     Defendants further failed to pay Qamar all wages owed, including all accrued but unused Paid Time Off, which Defendants paid out as a matter of practice or policy to employees such as Qamar.

92.     Relying upon the terms of his Severance Provision, Brennan resigned his employment effective June 3, 2021.

93.     Defendants failed to provide Brennan with the required severance under the Brennan Severance Provision in breach of his employment agreement.

17

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

94.     Defendants further failed to pay Brennan all wages owed for accrued but unused Paid Time Off, which Defendants paid out as a matter of practice or policy to employees such as Brennan.

95.     Defendants induced Plaintiffs, through the promises and representations of its duly authorized officers, agents, and representatives, acting within the scope of their authority, to accept the employment agreements.

96.     Plaintiffs, to their detriment, relied upon the promises and representations of Defendants in accepting the employment agreements.

97.     Upon information and belief, prior to his termination, Carroll knew the represented and promised provisions concerning severance were not included in Brennan and Qamar's employment agreements.

98.     Defendants are in material and substantial breach of Brennan and Qamar's employment agreements.  Defendants failed to pay Plaintiffs the severance that Plaintiffs were and are entitled to under the terms of their employment agreements.

99.     Alternatively, Defendants made promises and representations on which they knew Plaintiffs relied with respect to the payment of severance upon separation.  Defendants failed to pay Plaintiffs the owed severance despite knowing that Plaintiffs relied upon these promises and representations.

## COUNT I – Breach of Contract

### *Plaintiff Brennan v. Defendants*

100.    Plaintiff Brennan incorporates by reference the preceding paragraphs as if fully set forth herein.

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

101.    Brennan entered into an oral employment agreement with Defendants pursuant to which Brennan agreed to provide his professional services for FSD as CMO, and pursuant to which Defendants agreed that if Brennan was terminated for without cause or resigned, Defendants would provide Brennan with a single payment equivalent to one year's base salary or $350,000.

102.    Brennan fulfilled each and every obligation under the parties' contract by performing the services required by him, until such time he resigned.

103.    Defendants materially and substantially breached their contract with Brennan by terminating him without cause and failing to provide him with the required severance in the amount of $350,000.

104.    As a direct and proximate result of the foregoing breaches, Brennan suffered economic damages and other damages for which he is entitled to compensation herein.

### COUNT II – Breach of Contract

#### *Plaintiff Qamar v. Defendants*

105.    Plaintiff Qamar incorporates by reference the preceding paragraphs as if fully set forth herein.

106.    Qamar entered into an employment agreement with Defendants pursuant to which Qamar agreed to provide her professional services for Defendants, and pursuant to which Defendants agreed that if Qamar was terminated for without cause or resigned, Defendants would provide Qamar with a payment equivalent to one year's salary.

107.    Qamar fulfilled each and every obligation under the parties' contract by performing the services required by her, until such time she was terminated without cause.

108.    Defendants materially and substantially breached their contract with Qamar by terminating her without cause and failing to provide her with her severance.

19

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

109.    As a direct and proximate result of the foregoing breaches, Qamar suffered economic damages and other damages for which she is entitled to compensation herein.

### Count III – Detrimental Reliance

#### *Plaintiff Brennan v. Defendants*

110.    Plaintiff Brennan incorporates by reference the preceding paragraphs as if more fully set forth herein.

111.    Brennan reasonably relied to his detriment on Defendants' promises and representations of the inclusion in his employment agreement of a severance payment in the amount of year's base salary in the event of a change of control and subsequent termination without cause or resignation.

112.    Defendants made such representations for the specific purpose of inducing Brennan to provide services.

113.    Defendants knew that Brennan would rely on their promises and representations.

114.    To his detriment, Brennan reasonably relied on Defendants' representations.

115.    By reason of the foregoing, Brennan to his detriment has relied upon the representations of Defendants and such reliance cost Brennan damages.

### Count IV – Detrimental Reliance

#### *Plaintiff Qamar v. Defendants*

116.    Qamar incorporates by reference the foregoing paragraphs as if more fully set forth herein.

117.    Defendants knew and appreciated that they would receive such enrichment as a result of their unlawful acts.

PHIL1 9545924v.5

118.    Qamar reasonably relied to her detriment on Defendants' promises and representations of the inclusion in her employment agreement of a severance payment in the amount of year's base salary in the event of a change of control and subsequent termination without cause or resignation.

119.    Defendants made such representations and promises for the specific purpose of inducing Qamar to provide services.

120.    Defendants knew that Qamar would rely on their promises and representations.

121.    To her detriment, Qamar reasonably relied on Defendants' representations.

122.    By reason of the foregoing, Qamar to her detriment has relied upon the representations of Defendants and such reliance cost Qamar damages.

### COUNT V- Unjust Enrichment

### *Plaintiff Brennan v. Defendants*

123.    Plaintiff Brennan realleges and incorporates by reference each and every allegation above as if fully set forth herein.

101.    Defendants have improperly retained Brennan's severance.

102.    Defendants have been unduly enrichment in that they have wrongfully and unjustly benefited from engaging in the unlawful acts herein described.

103.    Defendants knew and appreciated that they would receive such enrichment as a result of their unlawful acts.

104.    Defendants were unjustly enriched by the employment of Brennan.

105.    As a direct and proximate result of Defendants' unjust enrichment, Brennan has suffered substantial damages.

### COUNT VI – Unjust Enrichment

21

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

***Plaintiff Qamar v. Defendants***

106.     Plaintiff Qamar realleges and incorporates by reference each and every allegation above as if fully set forth herein.

107.     Defendants improperly retained Qamar's severance.

108.     Defendants have been unduly enrichment in that they have wrongfully and unjustly benefited from engaging in the unlawful acts herein described.

109.     Defendants knew and appreciated that they would receive such enrichment as a result of their unlawful acts.

110.     Defendants unjustly enriched from the work performed by Qamar.

111.     Defendants knew and appreciated that they would receive such enrichment as a result of their unlawful acts.

112.     As a direct and proximate result of Defendants' unjust enrichment, Qamar has suffered substantial damages.

## Count VII – Fraud

***Plaintiffs v. Defendants***

113.     Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

114.     Defendants materially misrepresented to Plaintiffs that if they were to perform their duties under their respective employment agreements, and if they were terminated without cause, or resigned, they would be compensated with severance in the amount of their respective base salary which was to be provided in a single payment.

115.     Defendants knew or believed such representations to be false.

116.     Defendants intended Plaintiffs to rely on the misrepresentations.

22

117.   Plaintiffs justifiably and detrimentally relied on Defendants' misrepresentations.

118.   As a direct and proximate result of Defendants' misrepresentation, Plaintiffs suffered damages.

## Count XVIII – Promissory Estoppel

### *Plaintiffs v. Defendants*

119.   Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

120.   Defendants made promises to Plaintiffs with respect to severance provisions in their agreements upon which Plaintiffs relied in choosing to continue their employments with Defendants and foregoing other opportunities.

121.   Upon information and belief, Defendants knew that Plaintiffs would rely upon the promises and representations set forth above.

122.   Defendants should reasonably expected these promises to induce Plaintiffs to continue their employment.

123.   Plaintiffs would undergo an injustice unless Defendants are required to honor their promises and representations regarding the provision of severance under the circumstances set forth above.

## Count VIX – Pennsylvania Wage Payment and Collection Law

### *Plaintiffs v. Defendants*

124.   Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

125.     Pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.*, Defendants are liable to Plaintiffs for the foregoing conduct, including, without limitation, unlawfully withholding their wages pursuant to the terms of their agreements.

126.     As a result of this unlawful conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court award the following relief:

(1) Judgment against Defendants for Plaintiff Brennan's unpaid severance;

(2) Judgment against Defendants for Plaintiff Qamar's unpaid severance;

(3) Compensatory and punitive damages;

(4) Liquidated damages;

(5) All costs and attorneys' fees incurred prosecuting these claims; and

(6) For such further relief as the Court deems just, proper, and equitable.

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephanie Grey, Esq.

Respectfully submitted,


/s/ Jonathan S. Krause
Jonathan S. Krause, Esq.
Matthew J. McHugh, Esq.
Stephanie M. Grey, Esq.
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
ph. (215) 569-4496
fax (215) 568-6603
jkrause@klehr.com
mmchugh@klehr.com
sgrey@klehr.com

*Counsel for Plaintiffs*
*Edward Brennan, Jr. and Huma Qamar*

Dated: July 9, 2021

25

PHIL1 9545924v.5

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

# EXHIBIT 1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

## DECLARATION OF DR. RAZA BOKHARI

I, Raza Bokhari, under penalty of perjury and pursuant to 18 Pa. C.S.A. § 4904, hereby declare and state as follows:

1.    I have personal knowledge of, and could testify to, the matters set forth herein.  I submit this Declaration in support of Plaintiffs Edward Brennan, Jr. ("Brennan") and Huma Qamar's ("Qamar") Complaint against Defendants FSD Pharma Inc. ("FSD") and FSD Biosciences Inc. ("FSD Biosciences") (collectively, "Defendants").

2.    I was the Executive Chairman of the Board of Directors (the "Board") and Chief Executive Officer ("CEO") for FSD until May 14, 2021.

3.    I am currently the CEO for FSD and have been placed on administrative leave as of May 14, 2021.

4.    Donal Carroll ("Carroll") was the Chief Financial Officer ("CFO") of FSD until his removal on May 5, 2021.

5.    In Carroll's role as CFO, he reported directly to me, as CEO.   I would act within the scope of my authority in directing Carroll to perform certain job duties, including memorializing the terms of agreements reached between Defendants and employees.

6.    In my role as Executive Chairman of the Board and CEO, I was a duly authorized officer, agent and representative of Defendants engaged in their businesses and acting within the scope of my employment and authority with Defendants.

**Brennan's Employment Agreement**

7.    On February 7, 2021, I met with Brennan to discuss the status of FSD's research and development ("R&D") efforts as well as Brennan's future with Defendants.

PHIL1 9571980v.1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

8.      During this meeting, Brennan conveyed that he needed certain assurances given the uncertainty caused by the proxy fight initiated by certain dissident directors and shareholders.

9.      During the meeting, in partial response to Brennan's concerns, as well as in reflection of the tremendous value Brennan provided to Defendants, I represented that Brennan would be re-assigned as Chief Medical Officer ("CMO") of FSD.

10.     As a result of this promotion, I represented that Brennan's salary would increase to $350,000.

11.     I further represented to Brennan, to address his concern about the proxy fight and the future of Defendants, and to incentivize him to remain employed by Defendants, that his Employment Agreement would be modified – in addition to other changes – to provide that Brennan be entitled to severance in the event that there was a change of the Board and executive leadership of Defendants as a result of the proxy fight.

12.     Following this meeting, Brennan and I met with Carroll via phone, during which I informed Carroll of Brennan's change in position and what provisions were to be included in Brennan's revised employment agreement due to Brennan's new position as the CMO.

13.     I represented that the following provisions were to be included in Brennan's new employment agreement for his position as CMO:

      a.   A severance agreement provision that stated in the event of a change in control of the Board and executive leadership of Defendants, if Brennan was terminated without cause or resigned, Brennan would have the option to elect severance in the amount of one year's base salary to be issued in a single payment without any notice period ("Brennan Severance Provision");

2

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

    b.   Brennan's base salary would increase to $350,000 effective immediately, and retroactive to January 2, 2021;

    c.   Brennan should be compensated $100,000 as a cash bonus for the year 2020;

    d.   Brennan's new title would be CMO; and

    e.   Any disputes over the agreement would be adjudicated in Pennsylvania and governed by Pennsylvania law.

14.    I instructed Carroll to prepare a written employment agreement memorializing the above provisions, including the Brennan Severance Provision, which was similar to provisions I had authorized and signed in December 2020 for Carroll.

**Qamar's Employment Agreement**

15.    In March 2021, I met with Qamar in FSD's Bensalem Office. During this meeting we discussed hiring additional staff for FSD's R&D efforts. I also represented that Qamar should be promoted to Senior Vice President and Head of the R&D Program, following the resignation of Randy Mack, President, FSD Biosciences.

16.    During this meeting, Qamar expressed concern in accepting this position due to the upcoming shareholder vote and the potential change of the Board and executive leadership of Defendants. Qamar further expressed trepidation about continuing her employment given the uncertainty.

17.    During this meeting, I represented to Qamar that her employment agreement would contain a severance provision which would protect her in the event of a change in the control of Defendants' Board and executive leadership.

18.    In particular, I represented that Qamar's employment agreement would include a provision stating that in the event of a change of the Board and executive leadership of Defendants,

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

if FSD terminated Qamar without cause, or if Qamar resigned, Qamar had the option to elect severance in the amount of one year's base salary to be issued in a single payment ("Qamar Severance Provision").

19.    In addition, I represented to Qamar that in her position as Senior Vice President of FSD and Head of the R&D Program her base salary would increase to $250,000.

20.    Qamar and I met with Carroll via phone to discuss the terms of Qamar's new employment agreement.   During this meeting, I instructed Carroll to present an employment agreement for Qamar's new role as Senior Vice President of FSD and Head of the R&D Program. I further instructed Carroll to include in Qamar's employment agreement provisions for the following terms:

     a.  The Qamar Severance Provision, similar to the provisions I authorized and signed for Carroll in December 2020; and

     b.  Qamar's new base salary of $250,000.

21.    I instructed Carroll to prepare a written contract memorializing the above provisions.

22.    On April 2, 2021, Defendants promoted Qamar to Senior Vice President of FSD and Head of the R&D Program.

**A Change of FSD Pharma Inc.'s Executive Leadership**

23.    On April 20, 2021, the Board held a meeting during which the Board approved a resolution authorizing Defendants' management and Chairman to determine which key executives and employees' employment severance agreements were at risk in an event of a change of Defendants' Board and executive leadership.

PHIL1 9571980v.1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

24. The Board further authorized Defendants' management and Chairman to enter into agreements with such executives and employees to disburse their severance packages so that they would not be concerned about a near-term loss of employment and income, and so that the key executives and employees did not abandon their positions in advance of the contested shareholder meeting.

25. The employees considered critical to FSD and for whom the severance packages were to be approved included Brennan, Qamar, Carroll and Dr. Sara May.

26. On May 5, 2021, Carroll was removed from his position as CFO for breach of his fiduciary duties and on the advice of Defendants' corporate counsel.

27. On May 13, 2021, in Philadelphia, a dinner was held the evening before the general and annual shareholder meeting.

28. I attended this dinner along with FSD's executives, senior management, advisors and certain board members, which included Brennan and Qamar.

29. At this dinner, Qamar informed me that the Qamar Severance Provision was not in her employment agreement.

30. I represented to Qamar that I had instructed Carroll to include the Qamar Severance Provision in her employment agreement and that the Qamar Severance Provision would be included in her employment agreement.

31. On May 14, 2021, following the proxy vote, I no longer served as the Chairman of the FSD Board and was placed on administrative leave as CEO.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on this 9th day of July, 2021.

5

Raza Bokhari, MD

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

6

PHIL1 9571980v.1

# EXHIBIT 2

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**DRAFT – May 21, 2019**

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (hereinafter this "**Agreement**") is made effective the _____ day of _____, 2019 (the "**Effective Date**")

**B E T W E E N :**

**FSD PHARMA INC.** (the "**Company**")

- and -

**EDWARD BRENNAN,** ____ (the "**Employee**")

## RECITALS

**WHEREAS** the Company wishes to employ the Employee and the Employee wishes to be employed by the Company pursuant to the terms and conditions of this Agreement;

**AND WHEREAS** the parties agree that the contractor agreement dated March 27, 2019 shall terminate upon execution of this Agreement;

**NOW THEREFORE** for good and valuable consideration set forth in this Agreement, the parties agree as follows:

## SECTION 1 - EFFECTIVE DATE AND TERM

**1.1    Effective Date and Term.** The terms and conditions of this Agreement shall become effective on May 29, 2019 (the "**Start Date**"), and shall continue for five (5) years, subject to the termination provisions set forth in Section 4. Notwithstanding the foregoing, the parties agree that this Agreement is not a fixed term contract.

## SECTION 2 - POSITION

**2.1    Capacity and Services.** The Company shall employ the Employee in the position of President, FSD Pharma Sciences Division, which is a division of the Company, reporting directly to the Chief Executive Officer (the "**CEO**"), or his/her designee. The Employee In his position, the Employee shall perform such duties and have such authority as are normally associated with the position and as may be assigned or delegated from time to time, and which include, but are not limited to:

(a)    actively planning organizing, directing, and coordinating the business activities of Biosciences division and its wholly owned subsidiaries with full P&L responsibilities;

- 2 -

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed By: Stephanie Grey, Esq.

(b)     actively participating in strategic planning, human resource management, capital and operating budgets, forecast and projections of the Company's Biosciences Division; and

(c)     actively evaluating merger and acquisition opportunities to expand the Company's Biosciences Division.

At all times, the Employee's employment is conditioned upon him exercising his duties with due regard to the Company's Business (as defined below) and/or license under the *Access to Cannabis for Medical Purposes Regulations,* the *Cannabis Act* and any related statutory acts in Canada and the United States. The Employee shall perform all duties and responsibilities in a manner consistent with all applicable laws as well as with the written policies of the Company that have been made available to Company employees.  The Employee shall, if so requested by the Company, serve without additional compensation, as an officer, director or manager of any subsidiary or affiliate of the Company.  The Employee acknowledges that he is a fiduciary and has fiduciary obligations to the Company that continue even after his employment ends.

**2.2     Creation of Biosciences Division.**  In accordance with Section 7.4 below, the parties to this Agreement agree that the Employee's role may be assigned by the Company to a newly incorporated entity in the future as solely determined by the Board of Directors of the Company.

**2.3     Other Duties**.  The Employee agrees that he will seek written permission from the Company regarding any external roles (including board roles), that he holds or wishes to hold outside of his employment with the Company, and the Company agrees that it shall not exercise its discretion unreasonably in this regard.

**2.4     Probationary Period.**  The Employee shall be subject to a ninety (90) day probationary period from the Effective Date, during which time the Company may terminate the Employee's employment at any time and for any reason without notice or payment of salary, or entitlements in lieu, except for salary and any other wages accrued and owing to the effective date of termination and any other entitlements owing under applicable legislation.

**SECTION 3 – COMPENSATION AND BENEFITS**

**3.1     Initial Options.**  The Company shall award the Employee 500,000 stock options (the "**Initial Options**") on the Effective Date, which shall vest after the successful completion of the Probationary Period as set forth above in Section 2.4 (as determined in the Company's sole discretion acting reasonably (the "**Initial Grant Date**"). Such Initial Options shall be granted at market price on the Start Date. These Initial Options shall expire five years after the Initial Grant Date, subject to earlier forfeiture in accordance with the terms hereof or the terms of the Company's Share Option Plan (the "**Plan**").

**3.2     Base Salary.**  The annual gross base salary of the Employee shall be $275,000 (the "**Base Salary**"), to be pro-rated for any partial year of employment.

**3.3     Discretionary Bonus Plan.**  The Employee shall be eligible to participate in the Company's Discretionary Bonus Plan (the "**Bonus Plan**"), as may be amended from time to time on the following terms:

(a)     in the first year of this Agreement, the Employee shall be eligible to receive up to 50% of his Base Salary as cash bonus, based on prescribed written performance milestones agreed between the Employee and the CEO within 60 days' of the Effective Date of this Agreement;

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

(b)   thereafter, the Employee and Company shall agree in advance of the start of the next year of employment on the prescribed written performance objectives with the following targets under the Bonus Plan:

(i)   after the completion of the second year of employment under this Agreement, the Employee shall be eligible to receive up to 60% of his Base Salary as a cash bonus;

(ii)   after the completion of the third year of employment under this Agreement, the Employee shall be eligible to receive up to 70% of his Base Salary as a cash bonus;

(iii)   after the completion of the fourth year of employment under this Agreement, the Employee shall be eligible to receive up to 80% of his Base Salary as a cash bonus; and

(iv)   after the completion of the fifth year of employment under this Agreement, the Employee shall be eligible to received up to 90% of his Base Salary as a cash bonus.

(c)   Subject to the terms and conditions below, a cash bonus payable under this Bonus Plan is generally payable within 90 days of completion of the anniversary year.

(d)   The Employee must be in active employment in order to receive any payment under the Bonus Plan. No period of notice whether occasioned by the Employee or the Company shall be considered active service.

(e)   The Employee shall be entitled to a pro-rated Bonus for any partial year only if this Agreement is terminated in accordance with Section 4.3.

(f)   Any discretionary bonus under this Section 3.3 does not accrue after the Employee gives or receives notice of termination, and is only earned and payable as noted above in this Section 3.3 regardless of whether such termination is with or without notice, adequate notice or legal notice or is with or without legal or just cause, the Employee's rights shall be strictly limited to those provided for in this Section 3.3. Unless otherwise specifically provided in writing, the Employee shall have no claim to or in respect of any discretionary bonus payments had due notice of termination of employment been given, nor shall the Employee have any entitlement to damages or other compensation or any claim for wrongful termination or dismissal in respect of any discretionary bonus payments, which may have or would have been payable to the Employee if such wrongful termination or dismissal had not occurred or if due notice of termination had been given.

(g)   The Company reserves the right to convert any cash payments under Section 3.3 to equity-based incentives.

**3.4   Share Incentive Plan.**  The Employee shall be eligible to receive 2,000,000 stock options (the "**Options**") for each completed year of service under this Agreement to a maximum of five (5) years from the Effective Date.

(a)   The Employee shall be eligible to receive these Options on an annual basis commencing one year from the Effective Date.  Each year's grant of such Options

shall be divided as 50% being time-based and 50% performance-based objectives. The vesting schedule and performance objectives of such Options shall be reflected in each applicable grant agreement.  These Options shall expire five years from the respective grant date(s), subject to earlier forfeiture in accordance with the terms of this Agreement, or the terms of the Plan or applicable grant agreement.  The Employee's entitlements to Options hereunder shall be subject to adjustment for stock splits, reverse splits and other like events.

(b)    The Employee must be in active employment in order to receive the Options.  No period of notice, whether occasioned by the Employee or the Company shall be considered active service.

(c)    Options do not vest after the Employee gives or receives notice of termination, whether or not such termination is with or without notice, adequate notice or legal notice or is with or without legal or just cause, the Employee's rights shall be strictly limited to those provided for in the Plan or as otherwise provided in the applicable grant agreement.  Unless otherwise specifically provided in writing, the Employee shall have no claim to or in respect of any Options which may have or would have become vested Options had due notice of termination of employment been given nor shall the Employee have any entitlement to damages or other compensation or any claim for wrongful termination or dismissal in respect of any Options or loss of profit or opportunity which may have or could have vested or accrued to the Employee if such wrongful termination or dismissal had not occurred or if due notice of termination had been given.

**3.5    Benefits.**  The Employee shall be eligible to participate in all benefit plans that the Company maintains from time to time for the benefit of its senior employees, in accordance with the terms and conditions of the plans.  The Company may at any time and from time to time, modify, suspend, or discontinue any or all such benefits plans with or without prior notice.

**3.6    Paid Time Off.**  The Employee shall be entitled to take 28 days of paid time off ("**PTO**") per calendar year, prorated for each partial calendar year of employment.  This PTO benefit is inclusive of the Employee's entitlement to vacation, statutory holidays, sick and bereavement leave under Ontario's *Employment Standards Act, 2000*, as amended or replaced (the "**ESA**"). The Company will allow remaining PTO to be carried over from one calendar year to the next; however, any PTO that is carried over from one calendar year to the next and not used before December 31st of the following calendar year shall be forfeit and forever lost without any compensation. The Employee acknowledges that this Section 3.6 is a greater right or benefit under the ESA.

**3.7    Expenses.**  The Company shall reimburse the Employee for the Employee's travel and other expenses or disbursements reasonably and necessarily incurred or made in connection with the Company's business.  Expenses will be reimbursed in accordance with policies and practices approved by the Company.  The Employee shall furnish statements and receipts for all such expenses prior to reimbursement.

## SECTION 4 - TERMINATION AND RESIGNATION

**4.1    Termination for Cause.**  The Company may terminate the employment of the Employee at any time for cause by written notice to the Employee.  For the purposes of this Agreement, "cause" means wilful neglect of duty and/or wilful misconduct and/or just cause at common law. If the Company terminates the employment of the Employee for cause under this Section 4.1, the Company shall not be obligated to make any further payments or provide any further entitlements

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

under this Agreement or otherwise, subject only to the express minimum statutory requirements of the ESA, if any, and any amounts which may be due and remaining unpaid at the time of the termination of employment such as Base Salary, vacation pay and expenses properly accrued to the termination date ("**Accrued Entitlements**").

**4.2     Resignation by Employee.**  The Employee shall give the Company 60 days' notice of the resignation (the "**Resignation Period**") of the Employee's employment hereunder; however, it is understood and agreed that the Company shall be entitled to:

(a)     waive all or part of that notice and accept the Employee's resignation effective at an earlier date, subject to providing the Employee his Accrued Entitlements up to the end of the Resignation Period, which shall not be less than his minimum statutory entitlements under the ESA over that period.  The Employee agrees that any waiver of the Resignation Period by the Company hereunder shall not amount to a termination of the Employee's employment by the Company; or

(b)     assign the Employee transitional or temporary duties through such Resignation Period, or have the Employee work at another location (within reason), and the Employee agrees that these actions by the Company shall not amount to a termination of the Employee's employment by the Company.

**4.3     Termination without Cause.**  Following successful completion of the probationary period (as set forth in Section 2.2), the Company may terminate the employment of the Employee without cause at any time, whereupon the Company shall provide the Employee with:

(a)     two (2) months of advance notice of termination (the "**Notice Period**"), which shall be inclusive of any notice of termination required under the ESA;

(b)     following completion of such Notice Period, and subject to the terms below, a payment equivalent to ten (10) months' of Base Pay, which shall be inclusive of any notice of termination or statutory severance pay, if any, under the ESA and which shall be paid on regularly scheduled pay dates over such ten (10) month period;

(c)     pro rata target discretionary bonus payment for the partial year worked by the Employee up to the date notice is provided under Section 4.3(a);

(d)     the benefit plan contributions necessary to maintain the Employee's participation during the greater of the Notice Period or the notice period prescribed by the ESA in all benefit plans provided to the Employee by the Company immediately before the termination of the Employee's employment;

(e)     the Employee's Accrued Entitlements as of the effective termination date; and

(f)     any other minimum statutory entitlements owing to the Employee, such as vacation pay, without duplication, as set forth in the ESA.

**4.4     No Less than Minimum Entitlements under the ESA**.  Section 4.3(a) and Section 4.3(b) are intended to compensate the Employee for notice of termination/pay in lieu and statutory severance pay under the ESA.  In the event that Section 4.3(a) and Section 4.3(b) are less than the Employee's minimum entitlements to notice of termination/pay in lieu and/or statutory severance pay under the ESA, then the Company shall additionally provide the Employee with a

Case# 2021-03756-0 - JUDGE.50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

"top up" lump sum payment to ensure that the Employee receives his minimum amount of termination pay/pay in lieu, and statutory severance pay, if applicable, under the ESA.

**4.5** **No Further Claims.** In the event of the Employee's dismissal without cause in accordance with Section 4.3, and upon provision of the payments and other benefits set forth in Section 4.3 (and 4.4, if applicable) the Employee will not be entitled to any additional notice, pay in lieu of notice, severance payments or other compensation or entitlements of any kind, pursuant to the common law or otherwise. Notwithstanding the foregoing, in no event will the Employee receive less than his minimum statutory entitlements as prescribed by the ESA.

**4.6** **Release of Claims.** In order to receive any entitlement hereunder in excess of the statutory minimums prescribed by the ESA, the Employee shall execute a release of claims relating to his employment in favour of the Company and its affiliates and in a form provided by the Company.

**4.7** **Effect of Termination.** The Employee agrees that upon cessation of his employment for any reason whatsoever, the Employee shall be deemed to have immediately resigned any position that the Employee may have as an officer, director or Employee of the Company together with any other office, position or directorship that the Employee may hold in any of the Company's related entities and its affiliates. In such event, the Employee shall, at the request of the Company, forthwith execute any and all documents appropriate to evidence such resignations. The Employee shall not be entitled to any payments in respect of such resignations in addition to those provided for herein.

## SECTION 5 - CHANGE OF CONTROL

**5.1** For the purposes of this Section 5:

**"Target"** means the Company; and

**"Change of Control Transaction"** means:

(a) the acquisition of sufficient number of voting securities in the capital of the Target so that the acquirer, together with persons acting jointly or in concert with the acquirer, become entitled, directly or indirectly, to exercise more than 50% of the voting rights attaching to the outstanding voting securities in the capital of the Target (provided that, prior to the acquisition, the acquirer was not entitled to exercise more than 50% of the voting rights attaching to the outstanding voting securities in the capital of the Target);

(b) the completion of a consolidation, merger, arrangement or amalgamation of the Target with or into any other entity whereby the voting security holders of the Target immediately prior to the consolidation, merger, arrangement or amalgamation receive less than 50% of the voting rights attaching to the outstanding voting securities of the consolidated, merged, arranged or amalgamated entity; or

(c) the completion of a sale whereby all or substantially all of the Target's undertakings and assets become the property of any other entity and the voting security holders of the Target immediately prior to the sale hold less than 50% of the voting rights attaching to the outstanding voting securities of that other entity immediately following that sale.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**5.2**     In the event of a Change of Control Transaction, any unvested Options granted to the Employee pursuant to Section 3.4 shall immediately vest.

## SECTION 6 - NON-COMPETITION, CONFIDENTIALITY AND PROPRIETARY RIGHTS

**6.1**     **Definitions**. For the purposes of this Section 6:

> (a)     "**Business**" means the business of growing medical or recreational cannabis.
>
> (b)     "**Customer**" means any commercial or institutional Entity who has: (i) purchased or licensed from the Company or its affiliates (with the Employee's knowledge) any product produced or service supplied, sold, licensed or distributed by the Company; or (ii) supplied to the Company or its affiliates (with the Employee's knowledge) any product to be produced, sold, licensed or distributed by the Company; provided that Customers shall only include any Entity who was a Customer during the six (6) months preceding the last date of the Employee's active employment.
>
> (c)     "**Entity**" means a partnership, limited partnership, limited liability partnership, company, joint stock company, trust, unincorporated association, joint venture or other entity or governmental entity, and persons uns have a similarly extended meaning.
>
> (d)     "**Prospective Customer**" means any commercial or institutional Entity that the Company or its affiliates was in active discussions about selling products or services related to the Business during the six (6) months preceding the last date of the Employee's active employment.
>
> (e)     "**Restricted Period**" means a period of twelve (12) months following the last day of active employment of the Employee.
>
> (f)     "**Territory**" means Canada and the United States.

**6.2**     **Non-Competition.**     During the Restricted Period, the Employee shall not, whether individually or in partnership or jointly or in conjunction with any other person, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, perform services for in a role similar to what is held in the twelve (12) months prior to termination with the Company or establish, control, own a beneficial interest in, or be otherwise commercially involved in any endeavour, activity or business in the Territory that is substantially similar to or competitive with the Business of the Company.

**6.3**     **Prohibited Investments.**     The Employee shall not be an investor, shareholder, or partner in any enterprise, association, company, joint venture or partnership (each, an "**Investment**") if the Investment conflicts with the interests of the Company or any of its or their affiliated or related entities.  The Employee shall identify and inform the Company of any potential conflicts that may arise as a result of an Investment by the Employee and the Employee shall, to the best of the Employee's efforts, reduce or eliminate any such conflict.  The Company reserves the right, acting reasonably, to determine whether any Investment conflicts with or is otherwise inconsistent with the Company's interests in which case the Employee shall be required to immediately eliminate any such conflict.

**6.4    Non-Solicitation.** During the Restricted Period, the Employee shall not, either individually or in partnership or jointly or in conjunction with any other person, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly:

(a)    canvass or solicit the business of (or procure or assist the canvassing or soliciting of the business of) any Customer for any purpose which is competitive with the Business; or

(b)    canvass or solicit the business of (or procure or assist the canvassing or soliciting of the business of) any Prospective Customer for any purpose which is competitive with the Business.

**6.5    Non-Solicitation of Employees.** During the Restricted Period, the Employee shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee, or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any officer, employee, consultant or agent of the Company or its affiliated or related entities whom the Employee supervised or had business contact with on behalf of the Company or its affiliated or related entities during the twelve (12) month period immediately prior to the end of the Employee's active employment, to discontinue or alter any one or more of their relationships with the Company or its subsidiaries or related entities. For greater certainty, this Section 6.5 shall not prohibit general advertisements in electronic or print media through which the Employee has not intentionally targeted any officer, employee, consultant or agent of the Company or its affiliated or related entities and where the first contact with respect thereto is initiated by such officer, employee, consultant, or agent.

**6.6    Confidentiality.** Except in the normal and proper course of the Employee's duties, the Employee shall not use, for the Employee's own account or disclose to anyone else, during or after the Employee's last day of active employment, any confidential or proprietary information or material relating to the Company's operations or business that the Employee obtains from the Company or the Company's subsidiaries and affiliates, and their officers, employees, agents, suppliers or customers, other than by virtue of the Employee's employment by the Company. Confidential or proprietary information or material includes, without limitation, the following types of information or material, in whatever form, both existing and contemplated, regarding the Company or any subsidiary or other affiliate of the Company: corporate information, including contractual licensing arrangements, plans, strategies, tactics, policies, resolutions, patent, trade-mark and trade name applications, and any litigation or negotiations; information concerning suppliers, marketing information, including sales, investment and product plans, customer lists, strategies, methods, customers, prospects and market research data; financial information, including cost and performance data, debt arrangements, equity structure, investors and holdings; operational and scientific information, including trade secrets; software; technical information, including technical drawings and designs; and personnel information, including personnel lists, resumes, personnel data, organizational structure and performance evaluations (the "**Confidential Information**"). Confidential Information does not include: (a) information that is in the public domain, unless such information falls into the public domain through unauthorized disclosure or other acts by the Employee; (b) information that was in the Employee's lawful possession prior to the disclosure and has not been obtained by the Employee either directly or indirectly from the Company or its affiliated or related entities; or (c) information that the Employee is required by law to disclose, provided that the Employee provides the Company with prior written notice of such disclosure.

Case# 2021-03756-0 - JUDGE.50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**6.7     Intellectual Property.**   All right, title and interest in all inventions, methodologies, concepts, documentation, specifications and any other works developed by the Employee in the scope of and during the course of the Employee's employment (the "**Works**") including all patent, copyright, trade-mark, trade secret and any other intellectual property and proprietary rights therein (the "**Intellectual Property Rights**") shall be the sole and exclusive property of the Company and the Employee hereby assigns and shall assign to the Company all such Intellectual Property Rights and waives all moral rights that the Employee may have in such Works for the benefit of the Company and its successors, assigns and licensees.  The Employee represents and warrants that the Works will not infringe the intellectual property and proprietary rights of any third parties. The Employee shall not disclose the Works to any third parties without the prior written consent of Company.

**6.8     Privacy.**   The Employee acknowledges and agrees that the Employee will take all necessary steps to protect and maintain the confidentiality of personal information of the employees, consultants, customers and suppliers of the Company and its affiliated and related entities obtained in the course of the Employee's employment with the Company.  The Company shall at all times comply, and shall assist the Employee to comply, with all applicable privacy laws. The Employee acknowledges and agrees that the disclosure of the Employee's personal information may be required as part of the ongoing operations of the Company's business, as required by law, as part of the Company's audit process, as part of a potential business or commercial transaction or as part of the Company's management of the employment relationship, and the Employee hereby grants consent as may be required by applicable privacy laws to the use and disclosure of personal information for those purposes, to only the limited extent necessary.

**6.9     Return of Property.**   The Employee agrees that all property and documents (including software and information in machine-readable form) of any nature pertaining to activities of the Company or any affiliated or related entity of the Company, including Confidential Information, in the Employee's possession now or at any time during employment, are and shall be the property of the Company or such subsidiary or other related entity, and that all such documents and all copies of them shall be surrendered to the Company whenever requested by the Company. Subject to applicable laws, in the event the Employee does not return such property upon termination of employment or otherwise requested by the Company, the Company has the right to deduct from any monies owing to the Employee the cost of such property from any amounts due and owing to the Employee.

**6.10     Acknowledgement.**   The Employee acknowledges that the Employee's services are unique and extraordinary.  The Employee also acknowledges that the Employee's position will give or has given the Employee access to Confidential Information of substantial importance to the Company and its business.   The Employee acknowledges that, in connection with the Employee's employment by the Company, the Employee will receive, or will become eligible to receive, substantial benefits and compensation.  The Employee acknowledges that the Employee's continued employment by the Company and all compensation and benefits and potential compensation and benefits to the Employee from such employment will be conferred by the Company upon the Employee only because and on condition of the Employee's willingness to commit the Employee's best efforts and loyalty to the Company, including protecting the Company's right to have its Confidential Information protected from non-disclosure by the Employee and abiding by the confidentiality, non-competition, non-solicitation and other provisions herein.  The Employee understands the Employee's duties and obligations as set forth in this Section 6 and agrees that such duties and obligations would not unduly restrict or curtail the Employee's legitimate efforts to earn a livelihood following any termination of the Employee's employment with the Company.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

6.**11    Reasonableness.** The Employee acknowledges that he has carefully read and considered Section 6 and, having done so, agrees that the restrictions set forth in this Section are fair and reasonable, and are legitimately required for the protection of the company's business interests and goodwill.  In the event that any part or portion of Section 6 is deemed by a court of competent jurisdiction to be overbroad or otherwise invalid, the Employee authorizes such court to enforce the provisions at issue to the fullest extent possible to protect the interests of the Company.  In addition, the Employee specifically agrees and understands that the covenants set forth in Section 6 shall survive the termination of the Employee's employment relationship with the Company.

6.12    **Company's Remedies for Breach**.  The Employee recognizes and agrees that damages in the event of a breach by him of any provision of this Section 6 would be difficult, if not impossible, to ascertain, and the Employee therefore agrees that if such breach occurs, the Company, in addition to and without limiting any other remedy or right it may have, shall have the right to an injunction or other equitable relief, in any court of competent jurisdiction, enjoining any such breach, and the Employee hereby waives any and all defenses he may have on the grounds of lack of jurisdiction or competence of the court to grant such an injunction or other equitable relief.  The Employee agrees further that the Company shall not be required to post any bond or surety in order to obtain such injunction or relief.  The existence of this right shall not preclude any other rights and remedies at law or in equity which the Company may possess.  Further, in the event that the Employee breaches any provision of this Section 6, and the Company successfully seeks to obtain compliance therewith and/or damages, the Employee will be responsible for the reasonable costs incurred by the Company, including reasonable attorneys' fees.

If Employee violates Section 6 and the Company brings legal action for injunctive or other relief, the Company shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the applicable restrictive period(s).  Accordingly, the covenants set forth in Section 6 shall be deemed to have the duration specified therein, computed from the date the relief is granted, but reduced by the time between the period when the restriction began to run and the date of the Employee's first violation of the applicable covenant(s).

6.13    To the extent the event that any of the provisions of this Section 6 should be adjudicated to exceed the time, geographic, product or service, or other limitations permitted by applicable law in any jurisdiction, then such provisions shall be deemed reformed in such jurisdiction to the maximum time, geographic, product or service, or other limitations permitted by applicable law.

## SECTION 7:  MISCELLANEOUS COVENANTS

7.1    **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, including consulting agreement dated March 7, 2019, and any other prior agreements and arrangements between the Employee and the Company.  The Employee hereby waives any right to assert a claim based on pre-contractual representations, negligent or otherwise, made by the Company or its representatives.

7.2    **Currency**.  Unless otherwise stated herein, all amounts referred to in this Agreement shall be in USD.

7.3    **Affiliated Corporations.**  By signing below the Employee agrees that the covenants and obligations to the Company, as well as the rights of the Company under this Agreement, shall run

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

in favour of and shall be enforceable by the parent and subsidiary companies of the Company. This Agreement is between the Employee and the Company.  The Employee shall have no right to enforce this Agreement against any party other than the Company.

**7.4    Assignment.**  The Employee may not assign all or any part of this Agreement without the prior written consent of the Company (which consent may be withheld for any reason) and any assignment or delegation made without such consent shall be void. Nothing shall prevent the Company from assigning any of its rights or obligations under the Agreement.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of each party hereto and his or its respective successors and assigns.

**7.5    Amendment.**  No amendment of this Agreement shall be effective unless made in writing and signed by the parties.

**7.6    Waiver.**  Any purported waiver of any default, breach or non-compliance under this Agreement shall not be effective unless in writing and signed by the party to be bound by the waiver.  No waiver shall be inferred from or implied by any failure to act or delay in acting by a party in respect of any default, breach or non-observance or by anything done or omitted to be done by the other party.  The waiver by a party of any default, breach or non-compliance under this Agreement shall not operate as a waiver of that party's rights under this Agreement in respect of any continuing or subsequent default, breach or non-observance (whether of the same or any other nature).

**7.7    Severability.**  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of the prohibition or unenforceability and shall be severed from the balance of this Agreement, all without affecting the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

**7.8    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable in that Province and shall be treated, in all respects as an Ontario contract.

**7.9    Attornment.**  The parties agree to attorn to the exclusive jurisdiction of Ontario.

**7.10    Taxes.**  The Employee agrees that he is solely responsible for making his own tax filings and remittances to the applicable tax authority.

**7.11    Successors and Assigns.**  This Agreement shall endure to the benefit of, and be binding on, the parties and their respective heirs, administrators, executors, successors and permitted assigns.  The Company shall have the right to assign this Agreement to any successor (whether direct or indirect, by purchase, amalgamation, arrangement, merger, consolidation or otherwise) to all or substantially all the business or assets of the Company provided only that the Company must first require the successor to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place.  The Employee by the Employee's signature hereto expressly consents to such assignment.  The Employee shall not assign or transfer, whether absolutely, by way of security or otherwise, all or any part of the Employee's rights or obligations under this Agreement without the prior consent of the Company, which may be arbitrarily withheld.

**7.12    Minimum Entitlements.**  At no time shall the Employee receive less than his minimum statutory entitlements under the ESA.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**7.13    Statutory Deductions and Withholdings.**    The Company may withhold from any amounts payable under this Agreement such federal or provincial taxes and other statutory deductions that are required by applicable law to be so withheld or deducted.

**7.14    Change in Terms and Conditions.**    The parties agree that the terms and conditions of this Agreement, and specifically Section 4 and Section 5, as may be amended in writing from time to time, shall govern the Employee's employment with the Company, regardless of the length of the Employee's employment or any changes to the Employee's terms of employment, including changes to position or compensation, and regardless of whether any such change is material or otherwise.

*[THE REST OF THE PAGE LEFT INTENTIONALLY BLANK]*



## EXECUTIVE'S ACKNOWLEDGEMENT

**Acknowledgement.** The Employee acknowledges that:

(a)     the Employee has had sufficient time to review the Agreement thoroughly;

(b)     the Employee has read and understands the terms of the Agreement and his obligations hereunder;

(c)     the Employee is receiving good and valuable consideration in exchange for being bound by the terms and conditions of this Agreement and shall not attach enforceability of any such covenants or effectiveness of this Agreement;

(d)     the Employee has been given a reasonable opportunity to obtain independent legal advice concerning the interpretation and effect of the Agreement; and

(e)     the Employee has received a fully executed original copy of the Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on the day and year first above written.

SIGNED, SEALED AND DELIVERED            )
the presence of:                                            )
                                                                     )
                                                                     )
_____            )
**Witness**                                              )   EDWARD BRENNAN, M.D.


                                                              BD PHARMA INC.


                                                              By: _____
                                                                     **Name**
                                                                     Title
                                                                     *I have authority to bind the Company.*

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephanie Grey, Esq.

# <u>EXHIBIT 3</u>

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (hereinafter this "**Agreement**") is made effective the 2nd day of April, 2021 (the "**Effective Date**")

**B E T W E E N:**

**FSD PHARMA INC.** (the "**Company**") - and -

**Huma Qamar, MD, MPH, CMI** (the "**Employee**")

## RECITALS

**WHEREAS** the Company wishes to employ the Employee and the Employee wishes to be employed by the Company pursuant to the terms and conditions of this Agreement;

**NOW THEREFORE** for good and valuable consideration set forth in this Agreement, the parties agree as follows:

## SECTION 1 - EFFECTIVE DATE AND TERM

**1.1**    **Effective Date and Term.**   The terms and conditions of this Agreement shall become effective on April 2, 2021 (the "**Start Date**"), and shall continue for five (5) years, subject to the terms of this Agreement.

## SECTION 2- POSITION

**2.1**    **Capacity and Services.**   The Company shall employ the Employee in the position of Senior Vice President, FSD Pharma, Inc. and Head of R&D Program, reporting directly to the Chief Financial Officer of the company his/her designee. The Employee in its position, the Employee shall perform such duties and have such authority as are normally associated with the position and as may be assigned or delegated from time to time, and which include, but are not limited to:

(a)    actively planning, organizing, directing, and coordinating all phases of clinical research of the Biosciences Division of the Company and its subsidiaries;

(b)    actively participating in planning, organizing, directing, and coordinating the business activities of Biosciences Division of the Company and its subsidiaries;

(c)    actively participating in strategic planning, human resource management, capital and operating budgets, forecast and projections of the Company's Biosciences Division; and

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephanie Grey, Esq.

(d)      actively participating in the evaluation of merger and acquisition opportunities to expand the Company's Biosciences Division.

The Employee shall perform all duties and responsibilities in a manner consistent with all applicable laws as well as with the written policies of the Company that have been made available to Company employees. The Employee shall, if so requested by the Company, serve without additional compensation, as an officer, director or manager of any subsidiary or affiliate of the Company. The Employee acknowledges that there is a fiduciary and has fiduciary obligations to the Company that continue even after their employment ends.

**2.2 Other Duties**. The Employee agrees that they shall seek written permission from the Company regarding any external roles, including board roles, that they hold or wish to hold outside of their employment with the Company, and the Company agrees that it shall not exercise its discretion unreasonably in this regard.

## SECTION 3- COMPENSATION AND BENEFITS

**3.1 Initial Options.** The Company shall award the Employee 2,500 stock options (the "**Initial Options**") on the Effective Date, which shall vest after the successful completion of the Probationary Period as set forth above in Section 2.3 (as determined in the Company's sole discretion, acting reasonably) (the "**Initial Grant Date**"). Such Initial Options shall be granted at $3.75CDN. These Initial Options shall expire five years after the Initial Grant Date, subject to earlier forfeiture in accordance with the terms hereof or the terms of the Company's Share Option Plan (the "**Plan**").

**3.2 Base Salary.** The annual gross base salary of the Employee shall be $250,000 (the "**Base Salary**"), to be pro-rated for any partial year of employment.

**3.3 Discretionary Bonus Plan.** The Employee shall be eligible to participate in the Company's Discretionary Bonus Plan (the "**Bonus Plan**"), as may be amended from time to time on the following terms:

(a)      in each calendar year of this Agreement, the Employee shall be eligible to receive up to 30% of their Base Salary as cash bonus

(b)      in the first year of this Agreement, the Employee's bonus eligibility shall be based on the attainment of prescribed written performance objectives agreed between the Employee and the manager within 60 days' of the Effective Date of this Agreement; thereafter, the Employee and Company shall agree in advance of the start of the next year of employment on the prescribed written performance objectives (the "**Milestones**"):

(c)      Subject to the terms and conditions below, any cash bonus payable under this Bonus Plan is generally payable within 60 days of completion of the anniversary year.

(d)      The Employee must be in active employment in order to receive any payment under the Bonus Plan. No period of notice whether occasioned by the Employee or the Company shall be considered active service.

Case# 2021-03756-0 - JUDGE.50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

- 3 -

(e)     The Employee shall be entitled to a pro-rated Bonus for any partial year only if this Agreement is terminated in accordance with Section 4.3.

(f)     Any discretionary bonus under this Section 3.3 does not accrue after the Employee gives or receives notice of termination, or after the effective date of termination occurs, and is only earned and payable as noted above in this Section 3.3 regardless of whether such termination is with or without notice, adequate notice or legal notice or is with or without legal or just cause, the Employees' rights shall be strictly limited to those provided for in this Section 3.3. Unless otherwise specifically provided in writing, the Employee shall have no claim to or in respect of any discretionary bonus payments had due notice of termination of employment been given, nor shall the Employee have any entitlement to damages or other compensation or any claim for wrongful termination or dismissal in respect of any discretionary bonus payments, which may have or would have been payable to the Employee if such wrongful termination or dismissal had not occurred or if due notice of termination had been given.

(g)     The Company reserves the right to convert any cash payments under Section 3.3 to equity-based incentives.

**3.4    Share Incentive Plan.**  The Employee shall receive 12,500 stock options (the "**Options**"), which shall vest as described herein.  The Options are granted at a strike price of $3.75 CAD.

(a)     The Options shall vest at the ratee of 2,500 per year for each completed year of service under this Agreement, commencing one year after the Effective Date. The Options shall expire five years from the Effective Date, subject to earlier forfeiture in accordance with the terms of this Agreement, or the terms of the Plan or applicable grant agreement.  The Employee's entitlements to Options hereunder shall be subject to adjustment for stock splits, reverse splits and other like events.

(b)     The Employee must be in active employment in order to receive the Options.  No period of notice, whether occasioned by the Employee or the Company, shall be considered active service.

(c)     Options do not vest after the Employee's gives or receives notice of termination, or after the effective date of termination occurs, whether or not such termination is with or without notice, adequate notice or legal notice or is with or without legal or just cause, the Employee's rights shall be strictly limited to those provided for in the Plan, or as otherwise provided in the applicable grant agreement.  Unless otherwise specifically provided in writing, the Employee shall have no claim to or in respect of any Options which may have or would have become vested Options had due notice of termination of employment been given nor shall the Employee have any entitlement to damages or other compensation or any claim for wrongful termination or dismissal in respect of any Options or loss of profit or opportunity which may have or would have vested or accrued to the Employee if such wrongful termination or dismissal had not occurred or if due notice of termination had been given.

**3.5    Benefits.**    The Employee shall be eligible to participate in all benefit plans that the Company maintains from time to time for the benefit of similar senior employees, in accordance with the terms and conditions of the plans.  The Company may, at any time and from time to time, modify, suspend, or discontinue any or all such benefits plans with or without prior notice.

**3.6    Paid Time Off.**  The Employee shall be entitled to take 28 days of paid time off (**"PTO"**) per calendar year, pro-rated for any partial calendar year of employment.  The Company will allow PTO to be carried over from one calendar year to the next.  Any PTO that is carried over from one calendar year to the next and not used before December 31st of the following calendar year shall be forfeit and forever lost without any compensation.  For example, if two days of PTO are carried over from 2021 to 2022, such two days of PTO must be used by December 31, 2023 in order to be forfeited and lost forever without compensation.

**3.7    Expenses.**    The Company shall reimburse the Employee for the Employee's travel and other expenses or disbursements reasonably and necessarily incurred or made in connection with the Company's business.  Expenses will be reimbursed in accordance with policies and practices approved by the Company.  The Employee shall furnish statements and receipts for all such expenses prior to reimbursement.

## SECTION 4 - TERMINATION AND RESIGNATION

**4.1    Termination for Cause.**    The Company may terminate the employment of the Employee at any time for cause by written notice to the Employee.  For the purposes of this Agreement, "cause" means wilful neglect of duty and/or wilful misconduct and/or just cause at common law.  If the Company terminates the employment of the Employee for cause under this Section 4.1, the Company shall not be obligated to make any further payments or provide any further entitlements under this Agreement or otherwise, subject only to any amounts which may be due and remaining unpaid at the time of the termination of employment such as Base Salary, vacation pay and expenses properly accrued to the termination date (**"Accrued Entitlements"**).

**4.2    Resignation by Employee.**    The Employee shall give the Company 60 days' notice of the resignation (the **"Resignation Period"**) of the Employee's employment hereunder; however, it is understood and agreed that the Company shall be entitled to:

(a)    waive all or part of that notice and accept the Employee's resignation effective at an earlier date, subject to providing the Employee with their Accrued Entitlements up to the end of the Resignation Period.  The Employee agrees that any waiver of the Resignation Period by the Company hereunder shall not amount to a termination of the Employee's employment by the Company; or

(b)    assign the Employee transitional or temporary duties through such Resignation Period, or have the Employee work at another location (within reason), and the Employee agrees that these actions by the Company shall not amount to a termination of the Employee's employment by the Company.

**4.3    Termination without Cause.**  Following successful completion of the probationary period (as set forth in Section 2.3), the Company may terminate the employment of the Employee without cause at any time, whereupon the Company will provide the Employee with:

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

(a)     two (2) months of advance notice of termination (the "**Notice Period**");

(b)     following completion of such Notice Period, and subject to the terms below, a payment equivalent to ten (10) months' of Base Pay and which shall be paid on regularly scheduled pay dates over such ten (10) month period;

(c)     pro rata target discretionary bonus payment for the partial year worked by the Employee up to the date notice is provided under Section 4.3(a);

(d)     the benefit plan contributions necessary to maintain the Employee's participation during the Notice Period in all benefit plans provided to the Employee by the Company immediately before the termination of the Employee's employment; and

(e)     the Employee's Accrued Entitlements as of the effective termination date.

**4.4     No Further Claims.**  In the event of the Employee's dismissal without cause in accordance with Section 4.3, and upon provision of the payments and other benefits set forth in Section 4.3, the Employee will not be entitled to any additional notice, pay in lieu of notice, severance payments or other compensation or entitlements of any kind, pursuant to the common law or otherwise.

**4.5     Release of Claims.**  In order to receive any entitlement hereunder, the Employee shall first execute a release of claims relating to their employment in favour of the Company and its affiliates and in a form provided by the Company.

**4.6     Effect of Termination.**  The Employee agrees that upon cessation of their employment for any reason whatsoever, the Employee shall be deemed to have immediately resigned any position that the Employee may have as an officer, director or Employee of the Company together with any other office, position or directorship that the Employee may hold in any of the Company's related entities and its affiliates.   In such event, the Employee shall, at the request of the Company, forthwith execute any and all documents appropriate to evidence such resignations. The Employee shall not be entitled to any payments in respect of such resignations in addition to those provided for herein.

## SECTION 5 - CHANGE OF CONTROL

**5.1**     For the purposes of this Section 5:

"**Target**" means the Company; and

"**Change of Control Transaction**" means:

(a)     the acquisition of a sufficient number of voting securities in the capital of the Target so that the acquirer, together with persons acting jointly or in concert with the acquirer, becomes entitled, directly or indirectly, to exercise more than 50% of the voting rights attaching to the outstanding voting securities in the capital of the Target (provided that, prior to the acquisition, the acquirer was not entitled to exercise more than 50% of the voting rights attaching to the outstanding voting securities in the capital of the Target);

Case# 2021-03756-0 - JUDGE.50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

(b) the completion of a consolidation, merger, arrangement or amalgamation of the Target with or into any other entity whereby the voting security holders of the Target immediately prior to the consolidation, merger, arrangement or amalgamation receive less than 50% of the voting rights attaching to the outstanding voting securities of the consolidated, merged, arranged or amalgamated entity; or

(c) the completion of a sale whereby all or substantially all of the Target's undertakings and assets become the property of any other entity and the voting security holders of the Target immediately prior to the sale hold less than 50% of the voting rights attaching to the outstanding voting securities of that other entity immediately following that sale.

**5.2** In the event of a Change of Control Transaction, any unvested Options granted to the Employee pursuant to Section 3.4 shall immediately vest.

## SECTION 6 - NON-COMPETITION, CONFIDENTIALITY AND PROPRIETARY RIGHTS

**6.1** **Definitions**. For the purposes of this Section 6:

(a) "**Business**" means the business of Pharmaceutical Research and Development of compounds marketed by the Company or any of its subsidiaries or affiliates, or in the Company's or any such subsidiary's or affiliate's developmental pipeline, as of the date of termination of this Agreement.

(b) "**Customer**" means any commercial or institutional Entity who has: (i) purchased or licensed from the Company or its affiliates (with the Employee's knowledge) any product produced or service supplied, sold, licensed or distributed by the Company; or (ii) supplied to the Company or its affiliates (with the Employee's knowledge) any product to be produced, sold, licensed or distributed by the Company; provided that Customers shall only include any Entity who was a Customer during the six (6) months preceding the last date of the Employee's active employment.

(c) "**Entity**" means a partnership, limited partnership, limited liability partnership, company, joint stock company, trust, unincorporated association, joint venture or other entity or governmental entity, and pronouns have a similarly extended meaning.

(d) "**Prospective Customer**" means any commercial or institutional Entity that the Company or its affiliates was in active discussions about selling products or services related to the Business during the six (6) months preceding the last date of the Employee's active employment.

(e) "**Restricted Period**" means a period of twelve (12) months following the last day of active employment of the Employee.

(f) "**Territory**" means United States and Canada.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**6.2    Non-Competition.**    During the Restricted Period, the Employee shall not, whether individually or in partnership or jointly or in conjunction with any other person, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, perform services for in a role similar to what they held in the twelve (12) months prior to termination with the Company, or establish, control, own a beneficial interest in, or be otherwise commercially involved in any endeavour, activity or business in the Territory that is substantially similar to or competitive with the Business of the Company.

**6.3    Prohibited Investments.**    The Employee shall not be an investor, shareholder, or partner in any enterprise, association, company, joint venture or partnership (each, an "**Investment**") if the Investment conflicts with the interests of the Company or any of its or their affiliated or related entities.  The Employee shall identify and inform the Company of any potential conflicts that may arise as a result of an Investment by the Employee and the Employee shall, to the best of the Employee's efforts, reduce or eliminate any such conflict.  The Company reserves the right, acting reasonably, to determine whether any Investment conflicts with or is otherwise inconsistent with the Company's interests in which case the Employee shall be required to immediately eliminate any such conflict.

**6.4    Non-Solicitation.**    During the Restricted Period, the Employee shall not, either individually or in partnership or jointly or in conjunction with any other person, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly:

    (a)    canvass or solicit the business of (or procure or assist the canvassing or soliciting of the business of) any Customer for any purpose which is competitive with the Business; or

    (b)    canvass or solicit the business of (or procure or assist the canvassing or soliciting of the business of) any Prospective Customer for any purpose which is competitive with the Business.

**6.5    Non-Solicitation of Employees.**    During the Restricted Period, the Employee shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any officer, employee, consultant or agent of the Company or its affiliated or related entities whom the Employee supervised or had business contact with on behalf of the Company or its affiliated or related entities during the twelve (12) month period immediately prior to the end of the Employee's active employment, to discontinue or alter any one or more of their relationships with the Company or its subsidiaries or related entities. For greater certainty, this Section 6.5 shall not prohibit general advertisements in electronic or print media through which the Employee has not intentionally targeted any officer, employee, consultant or agent of the Company or its affiliated or related entities and where the first contact with respect thereto is initiated by such officer, employee, consultant, or agent.

**6.6    Confidentiality.**    Except in the normal and proper course of the Employee's duties, the Employee shall not use for the Employee's own account or disclose to anyone else, during or after the Employee's last day of active employment, any confidential or proprietary information or material relating to the Company's operations or business that the Employee obtains from the Company or the Company's subsidiaries and affiliates, and their officers, employees, agents,

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

suppliers or customers or otherwise by virtue of the Employee's employment by the Company. Confidential or proprietary information or material includes, without limitation, the following types of information or material, in whatever form, both existing and contemplated, regarding the Company or any subsidiary or other affiliate of the Company: corporate information, including contractual licensing arrangements, plans, strategies, tactics, policies, resolutions, patent, trade-mark and trade name applications, and any litigation or negotiations; information concerning suppliers; marketing information, including sales, investment and product plans, customer lists, strategies, methods, customers, prospects and market research data; financial information, including cost and performance data, debt arrangements, equity structure, investors and holdings; operational and scientific information, including trade secrets; software; technical information, including technical drawings and designs; and personnel information, including personnel lists, resumes, personnel data, organizational structure and performance evaluations (the "**Confidential Information**").  Confidential Information does not include:  (a) information that is in the public domain, unless such information falls into the public domain through unauthorized disclosure or other acts by the Employee; (b) information that was in the Employee's lawful possession prior to the disclosure and has not been obtained by the Employee either directly or indirectly from the Company or its affiliated or related entities; or (c) information that the Employee is required by law to disclose, provided that the Employee provides the Company with prior written notice of such disclosure.

**6.7     Intellectual Property.**  All right, title and interest in all inventions, methodologies, concepts, documentation, specifications and any other works developed by the Employee in the scope of and during the course of the Employee's employment (the "**Works**") including all patent, copyright, trade-mark, trade secret and any other intellectual property and proprietary rights therein (the "**Intellectual Property Rights**") shall be the sole and exclusive property of the Company and the Employee hereby assigns and shall assign to the Company all such Intellectual Property Rights and waives all moral rights that the Employee may have in such Works for the benefit of the Company and its successors, assigns and licensees.  The Employee represents and warrants that the Works will not infringe the intellectual property and proprietary rights of any third parties. The Employee shall not disclose the Works to any third parties without the prior written consent of Company.

**6.8     Privacy.**  The Employee acknowledges and agrees that the Employee will take all necessary steps to protect and maintain the confidentiality of personal information of the employees, consultants, customers and suppliers of the Company and its affiliated and related entities obtained in the course of the Employee's employment with the Company.  The Company shall at all times comply, and shall assist the Employee to comply, with all applicable privacy laws. The Employee acknowledges and agrees that the disclosure of the Employee's personal information may be required as part of the ongoing operations of the Company's business, as required by law, as part of the Company's audit process, as part of a potential business or commercial transaction or as part of the Company's management of the employment relationship, and the Employee hereby grants consent as may be required by applicable privacy laws to the use and disclosure of personal information for those purposes, to only the limited extent necessary.

**6.9     Return of Property.**  The Employee agrees that all property and documents (including software and information in machine-readable form) of any nature pertaining to activities of the Company or any affiliate or related entity of the Company, including Confidential Information, in the Employee's possession now or at any time during employment, are and shall be the property

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

of the Company or such subsidiary or other related entity, and that all such documents and all copies of them shall be surrendered to the Company whenever requested by the Company.  Subject to applicable laws, in the event the Employee does not return such property upon termination of employment or sooner (including at any time during the Resignation Period) if requested by the Company, the Company has the right to (a) deduct from any monies owing to the Employee the cost of such property from any amounts due or owing to the Employee, and (b) reduce the Employee's Base Salary during the Resignation Period to an amount equal to the then-applicable minimum hourly wage, until such time, if any, during the Resignation Period as the Employee has returned such property.

**6.10     Acknowledgement.**  The Employee acknowledges that the Employee's services are unique and extraordinary.  The Employee also acknowledges that the Employee's position will give or has given the Employee access to Confidential Information of substantial importance to the Company and its business.    The Employee acknowledges that, in connection with the Employee's employment by the Company, the Employee will receive, or will become eligible to receive, substantial benefits and compensation.  The Employee acknowledges that the Employee's continued employment by the Company and all compensation and benefits and potential compensation and benefits to the Employee from such employment will be conferred by the Company upon the Employee only because and on condition of the Employee's willingness to commit the Employee's best efforts and loyalty to the Company, including protecting the Company's right to have its Confidential Information protected from non-disclosure by the Employee and abiding by the confidentiality, non-competition, non-solicitation and other provisions herein.  The Employee understands the Employee's duties and obligations as set forth in this Section 6 and agrees that such duties and obligations would not unduly restrict or curtail the Employee's legitimate efforts to earn a livelihood following any termination of the Employee's employment with the Company.

**6.11     Breach of a Restrictive Covenant.**  In the event of any breach by the Employee of any of the obligations under Section 6 of this Agreement, the Employee will be obligated to repay, and the Company will be entitled to collect from the Employee, all amounts paid prior to or after the date of such breach by the Company to the Employee under Section 4.3 of this Agreement, and the Company shall have no further obligations under Section 4.3.  In such a case, the Employee shall make a cash payment to the Company of all amounts owing within three (3) days of written demand therefor by the Company.  The rights of the Company under this Section 6.11 shall be in addition to any rights of the Company (a) under this Agreement, and (b)  to seek injunctive relief or other equitable or legal remedies in the case of any such breach by the Employee.

## SECTION 7 - MISCELLANEOUS COVENANTS

**7.1     Entire Agreement.**  This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written.  The Employee hereby waives any right to assert a claim based on pre-contractual representations, negligent or otherwise, made by the Company or its representatives.

**7.2     Currency.**  Unless otherwise stated herein, all amounts referred to in this Agreement shall be in USD.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

**7.3    Affiliated Corporations.**  By signing below the Employee agrees that the covenants and obligations to the Company, as well as the rights of the Company under this Agreement, shall run in favour of and shall be enforceable by the parent and subsidiary companies of the Company. This Agreement is between the Employee and the Company.  The Employee shall have no right to enforce this Agreement against any party other than the Company.

**7.4    Assignment.**  The Employee may not assign all or any part of this Agreement without the prior written consent of the Company (which consent may be withheld for any reason) and any assignment or delegation made without such consent shall be void. Nothing shall prevent the Company from assigning any of its rights or obligations under the Agreement.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of each party hereto and their or its respective successors and assigns.

**7.5    Amendment.**  No amendment of this Agreement shall be effective unless made in writing and signed by the parties.

**7.6    Waiver.**  Any purported waiver of any default, breach or non-compliance under this Agreement shall not be effective unless in writing and signed by the party to be bound by the waiver.  No waiver shall be inferred from or implied by any failure to act or delay in acting by a party in respect of any default, breach or non-observance or by anything done or omitted to be done by the other party.  The waiver by a party of any default, breach or non-compliance under this Agreement shall not operate as a waiver of that party's rights under this Agreement in respect of any continuing or subsequent default, breach or non-observance (whether of the same or any other nature).

**7.7    Severability.**  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of the prohibition or unenforceability and shall be severed from the balance of this Agreement, all without affecting the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

**7.8    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and the laws of the United States applicable in the Commonwealth of Pennsylvania and shall be treated, in all respects, as a Commonwealth of Pennsylvania contract.

**7.9    Attornment.**  For all purposes, the parties agree to attorn to the exclusive jurisdiction of the federal courts for the Eastern District of Pennsylvania, and the State courts located therein.

**7.10    Successors and Assigns.**  This Agreement shall endure to the benefit of, and be binding on, the parties and their respective heirs, administrators, executors, successors and permitted assigns.  The Company shall have the right to assign this Agreement to any successor (whether direct or indirect, by purchase, amalgamation, arrangement, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Company provided only that the Company must first require the successor to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place.  The Employee by the Employee's signature hereto expressly consents to such assignment.  The Employee shall not assign or transfer, whether absolutely, by way of

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stephanie Grey, Esq.

security or otherwise, all or any part of the Employee's rights or obligations under this Agreement without the prior consent of the Company, which may be arbitrarily withheld.

**7.11     Statutory Deductions and Withholdings.**   The Company may withhold from any amounts payable under this Agreement such federal or provincial taxes and other statutory deductions that are required by applicable law to be so withheld or deducted.

**7.12     Change in Terms and Conditions.**   The parties agree that the terms and conditions of this Agreement, and specifically Section 4 and Section 5, as may be amended in writing from time to time, shall govern the Employee's employment with the Company, regardless of the length of the Employee's employment or any changes to the Employee's terms of employment, including changes to position or compensation, and regardless of whether any such change is material or otherwise.

## SECTION 8- DISPUTE RESOLUTION

**8.1     Dispute Resolution Procedure.**   Any dispute, controversy or claim arising out of or relating to this Agreement ("**Dispute**") shall be subject to the dispute resolution procedure set forth in this Section 8 (the "**Dispute Resolution Procedure**"); provided, however, that the Company shall be entitled to seek injunctive relief from any court of appropriate jurisdiction in the case of any breach by the Employee of any of the terms of Section 6 of this Agreement; and provided further that such Dispute Resolution Procedure shall be non-binding, as described herein.

**8.2     Commencement of the Dispute Resolution Procedure.**   If a Dispute arises, either party may initiate the Dispute Resolution Procedure by giving written notice of the Dispute to the other party (the "**Notice of Dispute**").   The Notice of Dispute shall contain a brief statement of the nature of the Dispute and set out the relief requested.   Upon the submission of a Notice of Dispute, the parties shall, during the following fifteen (15) days, attempt to amicably resolve the Dispute through negotiations. (the "**Consultation Period**").

**8.3     Arbitration.**   If the Dispute is not resolved by the parties within the Consultation Period, the Dispute shall, at the request of either party by delivery of written notice (a "**Notice of Arbitration**") during the thirty (30) day period following the expiration of the Consultation Period (the "**Arbitration Election Period**"), be subject to non-binding arbitration under the rules of the American Arbitration Association, except to the extent that such rules conflict with the terms of this Section 8.3.   The following provisions shall apply to an arbitration commenced pursuant to this Section 8.3:

(a)     The arbitration shall be heard by a sole arbitrator (the "**Arbitrator**"), who the parties shall jointly select within thirty (30) days of the receipt of the Notice of Arbitration.   The Arbitrator shall be trained in the laws of the Commonwealth of Pennsylvania.   If the parties are unable to agree on the Arbitrator, either party may apply to have the Arbitrator appointed in accordance with the provisions of the American Arbitration Association.

(b)     The place of the arbitration shall be Philadelphia, Pennsylvania.

(c)      Each party shall bear its own costs (including legal fees) of preparing for and participating in the Dispute Resolution Procedure, including legal fees; provided,

Case# 2021-03756-0 - JUDGE.50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

however that the party against whom a decision is rendered by the Arbitrator shall bear all fees and disbursements of the Arbitrator. Notwithstanding the non-binding nature of the arbitration, the terms of this Section 8.3(c) shall be binding on the parties.

**8.4    Proceedings Confidential.**  The parties agree that any arbitration carried out hereunder shall be kept private and confidential, and that the existence of the proceedings and any element of it shall be kept confidential, except (a) where disclosure is lawfully required by a legal duty, and (b) where such information is already in the public domain other than as a result of a breach of this clause.

**8.5    Non-Binding Nature of Dispute Resolution Procedure.**  The Dispute Resolution Procedure shall be deemed concluded on the earlier of (a) the expiration of the Arbitration Election Period, if neither party has delivered a Notice of Arbitration, and (b) immediately upon the issuance of a non-binding decision by the Arbitrator, if either party has delivered a Notice of Arbitration during the Arbitration Election Period. Following the conclusion of the Dispute Resolution Procedure, the parties shall be free to mutually accept the results of such Dispute Resolution Procedure, or either party may reject such results and pursue all available legal and equitable remedies.

## SECTION 9- EXECUTIVE'S ACKNOWLEDGEMENT

**9.1    Acknowledgement.**  The Employee acknowledges that:

(a)     the Employee has had sufficient time to review the Agreement thoroughly;

(b)     the Employee has read and understands the terms of the Agreement and their obligations hereunder;

(c)     the Employee is receiving good and valuable consideration in exchange for being bound by the terms and conditions of this Agreement and shall not attach enforceability of any such covenants or effectiveness of this Agreement;

(d)     the Employee has been given a reasonable opportunity to obtain independent legal advice concerning the interpretation and effect of the Agreement;

(e)     the Employee has received a fully executed original copy of the Agreement; and

(f)     Part of the Employee's duties shall include entertaining and socializing from time to time in various settings and locations and during weekends. The Employee agrees that if the Employee is not comfortable participating in any such entertainment or social event, the Employee will promptly notify the CEO of the Company or his/her designee. In the absence of any such notification, it is understood that the Employee is voluntarily and/or willingly participating in such entertainment and social events, and does not find them objectionable.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written.

| | |
|---|---|
| SIGNED, SEALED AND DELIVERED<br>in the presence of: | )<br>)<br>)<br>) |
| _____<br>**Witness** | )<br>)    **Dr. Huma Qamar, MD, MPH** |

**FSD PHARMA INC.**

By: _Donal Carroll_ _____

**Donal Carroll**
Title Chief Financial Officer
*I have authority to bind the Company.*

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

# EXHIBIT 4

Case # 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.



Blake, Cassels & Graydon LLP
Barristers & Solicitors
Patent & Trade-mark Agents
199 Bay Street
Suite 4000, Commerce Court West
Toronto ON  M5L 1A9  Canada
Tel: 416-863-2400  Fax: 416-863-2653

**Christopher Jones**

Partner
Dir: 416-863-2704
christopher.jones@blakes.com

May 6, 2021

VIA EMAIL
SonshineA@bennettjones.com
SBieber@agbllp.com
ccummings@paulweiss.com

PRIVILEGED & CONFIDENTIAL

Reference: 25124/1

Aaron Sonshine
**Bennett Jones LLP**
3400 One First Canadian Place
P.O. Box 130
Toronto, ON  M5X 1A4

Simon Beiber
Adair Goldblatt Bieber LLPa

Christopher Cummings
Paul Weiss LLP

Dear Sirs:

### RE: Resolutions Approved at April 20, 2021 FSD Pharma Inc. Board of Directors Meeting

Our client, Mr. Anthony Durkacz, was provided yesterday with a book for the meeting of the board of directors (the "**Board**") FSD Pharma Inc. (the "**Company**") to be held today, May 6, 2021. The book includes draft minutes from the April 20, 2021 Board meeting, including minutes from portions of the meeting from which Mr. Durkacz was absent (though the matters considered are not necessarily of a nature that would preclude his participation). The minutes indicate that you attended and were present throughout the meeting as legal counsel to the Company.

The minutes indicate that, shortly after 4:07 p.m. on April 20, 2021, the Board approved the following three resolutions:

1. Authorize the management and the Chairman of the board to continue to pursue the existing litigations which are already in place and to contemplate new court applications against the dissident shareholders through existing counsels or any additional counsels in United States and Canada as needed and disburse current and estimated professional fees of ongoing services. [sic]

13079510.1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.

*Blakes*

Page 2

2. Authorize the management and the Chairman to transfer appropriate funds determined by counsel, to be either held in escrow or placed in a trust or any others appropriate mechanism proposed by counsel to ensure the sufficient funds are available to cover professional fees and other expenses to indemnify and hold harmless any existing or new claim that may arise against the Directors and officers of the company. [sic]

3. Authorize the management and the Chairman to determine which key executives and employees are under a threat of their employment agreement severance packages may not be honored in an event of change of control of the company and to enter into an agreement with such executives and employees to disburse their severance packages to restore confidence of these executives and employees so they do not abandon their positions in advance of the contested shareholder meeting. Such an arrangement excludes Dr. Raza Bokhari. [sic]

There is no indication in the minutes of any discussion of these resolutions prior to their approval – though elsewhere the minutes provide detailed disclosure of deliberations. There is also no indication of expert advice being provided on the matters included in the resolutions.

While our client has general concerns about the scope of authority delegated to management and the Chairman to authorize payment for an unlimited amount of known and unknown expenses, these are not his foremost concerns.  He is extremely concerned with the Board authorizations granted in resolutions 2 and 3.

Resolution number 2 provides for setting aside funds to cover unquantified and currently non-existent personal expenses of directors and officers at a time when they are no longer serving in that capacity. This amounts to transferring Company funds from the Company's control for the personal use by individuals who would then be former directors and management.  This is nothing more than a personal appropriation of corporate funds.

The resolution indicates that such transfer will be in amounts and to accounts to be determined by legal counsel. It is unclear which counsel this would be, but we note that this is an action for the benefit of the individuals in their personal capacities gives rise to clear conflict concerns for the Company's counsel both in acting and in advising on this course of action. That, however, is perhaps the least of the concerns.

Resolution 3 proposes paying severance packages to executives prior to any termination of their employment, or even any threat of such termination. Leaving aside the impropriety of such an action, the underlying logic is deeply flawed.

Such actions, even in the course of a contested proxy contest or hostile take-over, are not in the ordinary course of business – much less in the ordinary course of the Company's business as contemplated by Justice Hainey's order dated April 16, 2021.  As you know, in the first minutes of the May 5, 2021 hearing and several times thereafter, Justice Pattillo suggested that the Company had acted in breach of a court order.

The payments contemplated in resolutions 2 and 3 would amount to further breaches of a court order naming both the Company and each of the individual directors.

13079510.1

Case# 2021-03756-0 - JUDGE:50 Received at County of Bucks Prothonotary on 07/09/2021 5:03 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stephanie Grey, Esq.



Page 3

Authorizing and making such payments, in breach of a court order, would be inconsistent with the fiduciary duties directors and officers owe to the Company. Such actions would be outside of the scope of indemnity provided for in Section 136 of the *Business Corporations Act* (Ontario) ("**OBCA**") and would create the risk of personal liability of directors under Section 130 of the OBCA. It is almost certainly the case that such liability would also fall outside of the scope of the Company's insurance policies.

Directors and officers have various contractual and statutory rights to indemnification and severance. These rights are not altered by any change in the composition of the Board and will be as enforceable after the upcoming shareholder meeting as they are now – rendering these payments without any legitimate justification.

The Company's directors deserve to be clearly advised of the risks they are facing in authorizing these actions. We would hope that, upon advice from counsel present at the April 20 meeting and referenced in the resolutions themselves, the directors would revoke the authorities provided in those resolutions and take actions to ensure the Company's compliance with the various court orders to which it has become subject.

Yours very truly,

*"Christopher Jones"*

Christopher Jones

CCJ/smcn
Encl.

13079510.1

TORONTO    CALGARY    VANCOUVER    MONTRÉAL    OTTAWA    NEW YORK    LONDON    BEIJING

Blake, Cassels & Graydon LLP | **blakes**.com