**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD BRENNAN, JR.** and | : | |
| **HUMA QAMAR** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-3771** |
| | : | |
| **FSD PHARMA INC.** and | : | |
| **FSD BIOSCIENCES, INC.** | : | |
| | : | |

**MCHUGH, J.**                                              **December 13, 2021**

### MEMORANDUM

This is an action brought against FSD Pharma and its subsidiary, FSD Pharma Inc., following a change in control of the Board and the company's executive leadership.  Plaintiffs Edward Brennan, Jr., and Huma Qamar, two former executives at FSD Pharma, allege that in the months leading up to the proxy fight, FSD Pharma's CEO entered into oral contracts with Plaintiffs which promised severance payments in the event of a leadership change.  Plaintiffs plead that Defendants breached these contractual obligations by failing to provide severance packages following the corporate shake-up.  Defendants respond that written contracts govern the parties' obligations, rendering the alleged oral modifications irrelevant, and therefore move to dismiss for failure to state a claim.

As to Ms. Qamar, standard contract principles guide the analysis, and the written agreement she signed, which made no reference to a severance payment, entitles FSD to dismissal of her claims.  As to Mr. Brennan, the case presents a complex threshold issue.  The written contract between the parties specifies Ontario, Canada as the forum for any dispute.  Mr. Brennan contends that this forum selection clause was orally modified in favor of Pennsylvania.  The question then arises: should this Court decide whether such a modification occurred, or is that question properly

decided by the Canadian court?  For this court to presume to answer that question would amount to a premature decision on the merits of a critical issue in the case.  I will therefore dismiss Brennan's claims without prejudice on *forum non conveniens* grounds, conditioned upon an Ontario court considering his contention that the forum selection clause was orally modified.

## I.    **Factual Allegations**

This case follows from a proxy fight over leadership of the Board of Directors of FSD Pharma.  FSD is a publicly traded holding company and licensed producer of cannabis in Toronto, Canada, with a subsidiary called FSD Biosciences based in Pennsylvania.  *See* Compl. ¶8, ECF 1-1.  In January 2021, a struggle for control of FSD began when some shareholders sought to reduce the size of FSD's Board of Directors and replace six of the incumbent directors in anticipation of the May 2021 annual meeting.  Compl. ¶14, ECF 1.  During the shareholder meeting on May 14, 2021, FSD voted to remove FSD's Chairman and Chief Executive Officer, Raza Bokhari, from the Board.  Compl. ¶27, 88.  Mr. Bokhari was officially placed on administrative leave on or around May 17, 2021.[1]  *Id.* ¶88.

The pending dispute stems from events that took place in the months leading up to the proxy vote.  Mr. Brennan and Ms. Qamar allege that, in advance of the vote, Mr. Bokhari entered into binding contracts with them on behalf of FSD specifying that if the proxy vote resulted in a leadership change[2] and they resigned or were fired, they would receive severance payments.  *Id.*

---

[1] It is unclear from the pleadings whether Mr. Bokhari was placed on administrative leave on May 14, 2021 or May 17, 2021.  Compl. ¶¶27, 88.

[2] Defendants argue as an alternative defense that Plaintiffs fail to adequately plead that the leadership change which would trigger the severance payments actually occurred.  *See* Memo in Support of Motion to Dismiss, ECF 15 at 3 ("[T]he Complaint makes clear that Plaintiffs would be entitled to severance if there was a change in the control of FSD Pharma's board *and* such a change in Defendants' executive leadership.  But while the Complaint alleges a change in the composition of the board, it does *not* allege a change in executive leadership.  Rather, the Complaint alleges only that Bokhari, FSD Pharma's CEO, was placed on

¶¶1, 30, 58.  Once Bokhari was no longer in charge, Plaintiffs Edward Brennan, Jr. and Huma Qamar, employees of FSD, resigned: Mr. Brennan on June 3, 2002 and Ms. Qamar on May 26, 2021.  *Id*. ¶¶89, 92.  They never received their sought-after severance packages, which resulted in their decision to file suit.

The relevant facts are as follows:  Plaintiff Edward Brennan, Jr. became the President of FSD Biosciences in May, 2019.  *Id.* ¶17.  He worked from Defendants' office in Bensalem, Pennsylvania.  *Id*. ¶19.  His employment was governed by a written contract.  Relevant sections of the agreement contain 1) language specifying that modifications to his employment agreement must be in writing, 2) an Ontario choice of law provision, and 3) an Ontario forum selection clause:

- Section 7.5 specifies that "[n]o amendment of this Agreement shall be effective unless made in writing and signed by the parties." Compl. Ex. 2 Employment Agreement, § 7.5.

- Section 7.8 specifies that the employment agreement, and any claims arising out of it, "shall be governed and construed with the laws of the Province of Ontario and the laws of Canada applicable in that Province and shall be treated, in all respects, as an Ontario Contract." *Id.* § 7.8.

- Section 7.9 specifies as to venue, "[t]he parties agree to attorn to the exclusive jurisdiction of Ontario." § 7.9.

During Brennan's employment, he became concerned about the brewing proxy fight and whether he should remain employed at FSD and sought assurances from Mr. Bokhari.  *Id.* ¶¶21, 22.  In a meeting between Mr. Brennan and Mr. Bokhari on February 7, 2021, Mr. Bokhari

---

administrative leave.").   I need not reach this issue because even assuming that being placed on administrative leave constituted a leadership change, Plaintiffs' claims fail.

informed Brennan that he would be promoted to Chief Medical Officer ("CMO") of FSD, his base salary would increase to $350,000, and he would be entitled to severance in the event that there was a change in control of the Board and executive leadership of the company as a result of the proxy fight. *Id.* ¶¶20-25. Bokhari then informed Donal Carroll, Chief Financial Officer, about the modifications to Brennan's employment agreement. Brennan pleads that Bokhari advised Carroll that the venue provision was to be changed to Pennsylvania and instructed Carroll to prepare a written employment agreement memorializing the provisions. *Id.* ¶¶22, 28-30. Carroll never sent Brennan a modified, written employment contract, but some of the oral modifications – including an increase in pay and a change in job duties as CMO – were implemented by Defendants, during the period in which Bokhari was still employed at the company. *Id.* ¶¶34, 35. Following the proxy fight, Mr. Brennan resigned from his employment with FSD Biosciences on June 3, 2021, *Id.* ¶25, but Defendants never paid Brennan the severance payment allegedly owed under the oral agreement with Bokhari.

Plaintiff Huma Qamar began working as a Senior Director of FSD Biosciences in late January 2021. Compl. ¶54. Like Mr. Brennan, she expressed concerns about remaining employed at FSD depending on the outcome of the emerging proxy fight. *Id.* ¶56. To assuage her concerns, Mr. Bokhari agreed that Ms. Qamar would be promoted to the role of Senior Vice President of FSD and Head of the R&D Program, her base salary would increase to $250,000, and, in the event that the Board and executive leadership changed as a result of the proxy fight, she could elect severance if she was terminated without cause or if she resigned. *Id.* ¶¶57-59.

Bokhari later informed Carroll about the modifications to Qamar's employment agreement, and he instructed Carroll to prepare a written employment agreement memorializing the provisions that Bokhari and Qamar had agreed upon. *Id.* ¶¶60, 61. Although Carroll informed Qamar that

he was preparing the employment contract with the new terms, Carroll actually provided an employment contract without the inclusion of all the new terms.  Most significantly for this case, the contract did not contain the severance provision.  *Id*. ¶67.  Nonetheless, "[a]fter several rounds of negotiations," Qamar signed the employment agreement on April 10, 2021, received a raise and was promoted to the position of Senior Vice President of FSD and Head of the R&D Program.[3] *Id.*  ¶¶72,73.  According to the Plaintiffs, Carroll informed her that if she did not sign that agreement, her employment would be terminated.  *Id.* ¶71.  The agreement that Qamar signed contained an integration clause which expressly states that it "supersedes all prior agreements" and specifies that "[t]he Employee hereby waives any right to assert a claim based on pre-contractual representations, negligent or otherwise, made by the Company or its representatives."  Compl. Ex. 3 § 7.1, ECF 1-1.  Following the proxy vote, Qamar resigned on May 26, 2021.  *Id.* ¶ 25.  She did not receive a severance payment.  Plaintiff claims that even though her employment contract contained no reference to the severance provision, she is entitled to severance because the oral contract is valid and must be enforced.  *Id*. ¶¶ 74, 75.

## II.    Legal Standard

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

---

[3] Qamar asserts that the draft employment agreement contained the incorrect name and salary information. Compl. ¶68. That does not comport with my review of the final employment agreement, which provides: "The Company shall employ the Employee in the position of Senior Vice President, FSD Pharma, Inc. and Head of the R&D Program," and §3.2: Base Salary, "The annual gross base salary of the Employee shall be $250,000."  Compl. Exhibit 3 at §2.1: Capacity and Services. This suggests to me that as to title and salary, (albeit not severance), the document reflected the agreement Bokhari reached with Ms. Qamar.

## III.     Discussion

### A.   Brennan's Contract Claims are Dismissed on *Forum Non Conveniens* Grounds

Defendants argue that this Court cannot consider Brennan's claim that his contract was amended orally, because, as specified in his employment contract, his employment agreement is an "Ontario Contract" which "shall be governed and construed with the laws of Ontario and the laws of Canada" and where Ontario is the "exclusive jurisdiction." Compl. Ex.2 Employment Agreement, §§ 7.8, 7.9.  Plaintiff responds that when his contract was orally modified, the forum selection clause was also modified to favor Pennsylvania.[4]  This gives rise to an unusual procedural issue.  Ordinarily under Rule 12, a court is obligated to treat all well-pleaded allegations as true.  If I do so here and proceed to decide that an oral modification occurred, my application of a procedural standard would effectively determine the merits of the issue, because the threshold issue would be decided here rather than in Ontario as the written agreement requires.  Given the existence of a forum selection clause in the document, and a substantial body of appellate authority emphasizing the primacy of forum selection clauses in determining venue, I am persuaded that whether there was an oral modification of the contract as to venue should in the first instance be decided by a Canadian court.

The Supreme Court has made clear that forum selection clauses hold controlling weight, and that "[i]n all but the most unusual cases," claims concerning those parties should be litigated in the fora designated by the clauses.  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 66 (2013); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.1, 10, 15

---

[4] Defendants assert that even as pled by Plaintiffs, the forum selection clause was not modified.  In their pleadings, Plaintiffs do not allege that Bokhari and Brennan negotiated and agreed to modify the forum selection clause, but instead allege that Bokhari instructed Carroll to modify the forum selection clause to favor Pennsylvania, which does not satisfy the requirements to modify a contract, including that there be an offer and acceptance.  *See* Memo in Support of Motion to Dismiss at 13.  Even if this had been pled more specifically, my analysis would not change.

(1972) (reasoning that under federal law, a forum selection clause is "prima facie valid" and should be enforced unless it is "unjust or unreasonable" for reasons such as fraud or overreaching).[5]  The Third Circuit routinely enforces forum selection clauses.  In *In re Howmedica Osteonics Corp.*, following *Atlantic Marine*, the Third Circuit reasoned, that "where contracting parties have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause 'in all but the most unusual cases.'" 867 F.3d 390, 397 (3d Cir. 2017).

The Third Circuit has also held, under *Atlantic Marine*, that "*forum non conveniens* is the proper mechanism for enforcing a forum selection clause that points to a state or foreign forum."  *Collins v. Mary Kay, Inc*, 874 F.3d 176, 180 (3d Cir. 2017).  It is clear that a district court has discretion to dismiss a case on the basis of *forum non conveniens.  See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 237 (1981) ("[t]he *forum non conveniens* determination is committed to the trail court's sound discretion and may be reversed only when there has been a clear abuse of discretion.").  Such a procedure is not novel, as even before *Atlantic Marine*, the Third Circuit found dismissal under *forum non conveniens* the appropriate mechanism to enforce valid, non-federal forum selection clauses.  *Salavoora v. Jackson Nat. Life Ins. Co*, 246 F.3d 289, 297-98 (3d

---

[5] One of the "unusual cases" in which a forum selection clause would be considered "unjust or unreasonable" is "where the forum selection clause is the result of 'fraud in the inducement of [the forum selection] clause itself'" which is not at issue here.  *See MoneyGram Payment Systems, Inc.v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 847 (3d Cir. 2003) (non precedential) (citing *Prima Paint Corp. v. Flood & Conkling Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).  Here, Plaintiffs allege that the forum selection clause was changed to favor Pennsylvania law and Pennsylvania courts, but they have not alleged that the initial forum selection clause was fraudulently induced or in any way invalid *ab initio*.

Plaintiffs do bring a claim of fraud with respect to their allegation that, "Defendants materially misrepresented to Plaintiffs that if they were to perform the duties under their respective employment agreements, and if they were terminated without cause or resigned, they would be compensated with severance in the amount of their respective base salary."  Compl. ¶114.  As the panel in *MoneyGram Payment System*s suggests in its review of *Prima Paint*, a claim of fraud arising under a contract but independent from the forum selection clause itself "does not suspend operation of a forum selection clause." 65 Fed. Appx. at 847 (non precedential).

Cir. 2001) (Where "[t]ransfer is not available [because the] forum selection clause specifies a non-federal forum … it seems the district court would have no choice but to dismiss the action so it can be filed in the appropriate forum so long as dismissal would be in the interest of justice.").

Here, Brennan asks me not to dismiss his claim on the basis that the forum selection clause has been orally modified to favor Pennsylvania law and Pennsylvania courts.  Compl. ¶13.  As noted above, reaching this result would require me to make a merits determination as to whether the forum selection clause was orally modified.  As I have previously held, I cannot "address the proper forum by jumping to the merits." *Dan Lepore & Sons Company v. Torcon, Inc.*, 2021 WL 1122178 at *4 (E.D. Pa. March 21, 2021).  In a similar situation another federal court has observed that Plaintiff's argument puts "the proverbial cart before the horse."   *Wholesale Merchandise Processing, Inc. v. Orion Communications, Inc.*, No. 03:12-02003, 2013 WL 1361863, at *4 (D. Or. Mar. 4, 2013) (where a plaintiff argued that the defendant's breach permitted rescission of the entire contract, including the forum selection clause, but the court found that "[i]nterpretation of the forum selection clause is necessary to determine where the rescission claim will be tried").  Similarly, here, reaching the ultimate question of whether the forum selection clause was orally modified "would essentially give plaintiff the relief it seeks without requiring it to prove its case" in the proper forum court.  *Starlight Co., Inc. v. Arlington Plastics Machinery, Inc.*, No. C011121SI, 2001 WL 677908, at *4 (N.D. Cal. Jun. 8, 2001).

Additionally, there are policy implications to consider in selecting the method of addressing a dispute such as this one.  If a plaintiff can circumvent a forum selection clause simply by alleging an oral modification of a written agreement, there is a risk that artful pleading could undermine controlling precedent from appellate courts.[6]

---

[6] This observation is not meant to suggest that either Mr. Brennan or his counsel has engaged in such conduct here.

By dismissing Mr. Brennan's claims on the grounds of *forum non conveniens*, I avoid making a threshold merits determination as to whether there has been an oral modification. "A *forum non conveniens* dismissal 'den[ies] audience to a case on the merits.'" *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 432 (2007) (citing *Ruhrgas A.G. v. Marathon Oil Co,* 526 U.S. 574, 585 (1999)). Such a dismissal "is a determination that the merits should be adjudicated elsewhere" thereby "bypassing questions of subject-matter and personal jurisdiction, [because] considerations of convenience, fairness, and judicial economy so warrant [it]." *Id.*

Brennan's claims are dismissed conditionally and without prejudice with the proviso that an Ontario court consider his claims about the oral modification to his employment contract. In that regard, I note that Ontario Courts have enforced subsequent oral modifications to a contract despite the existence of a clause prohibiting oral agreements. *See Shelanu Inc. Print Three Franchising Corp.*, (2003), 64 O.R. 3d (Can. Ont. C.A) ¶54 (reasoning that "[w]here the parties have, by their subsequent course of conduct, amended the written agreement so that it no longer represents the intention of the parties, the court will refuse to enforce the written agreement. This is so even in the face of a clause requiring changes to the agreement to be in writing") citing *Colautti Construction Ltd. v. Ottawa (City)* (1984), 9 D.L.R. (4th) 265 (Can. Ont. C.A.), ¶30 (reasoning that even where terms are required to be in writing,  parties can, through their conduct, vary the terms of the contract). *See also Ellis v. Abell* (1884) 10. O.A.R. 226 (Can. Ont. C.A.) ¶ 85 (reasoning that an exception to the parol evidence rule is the existence of a subsequent oral agreement to rescind or modify a written contract, provided that the agreement is not invalid under the Statute of Frauds.)  If an Ontario Court concludes that the forum clause was modified, I will accept a transfer of jurisdiction back to this Court.

B.  Qamar's Contract Claims are Dismissed

Turning now to Plaintiff Qamar's claims, there are no such threshold issues to resolve as there is no forum selection clause and the parties agree that Pennsylvania law applies. Pursuant to the 12(b)(6) standard, I must take as true Plaintiffs' allegation that she had a conversation with Bokhari in which he promised her severance in the event of a change of control over the Board and executive leadership.  Compl. ¶58.  Nonetheless, I am compelled to dismiss Qamar's claims because she pleads that she had this conversation *before* she signed an employment contract which did not contain the severance provision, and which expressly stated that the agreement she signed "supersedes all prior agreements."  Compl. ¶¶ 71-72, Compl. Ex. 3 § 7.1.  The allegation that Qamar was previously promised a severance provision has no legal significance because she later signed a contract – well aware that it contained no language about the severance provision – in which she agreed to "waive any right to assert a claim based on pre-contractual representations." Compl. ¶¶67-71; Compl. Ex. 3 § 7.1.

In Pennsylvania, an integration clause like the one featured in Ms. Qamar's employment contract, "which states that a writing is meant to represent the parties' entire agreement is…a clear sign that the writing is meant to do just that and thereby expresses all the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca v. Pittsburg Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).[7]  Indeed, an integration or merger clause "is likely to conclude the issue [of] whether the agreement is completely integrated."  *See* Restatement (Second) of Contracts §216, cmt e (1981).  Qamar's consent to this integration clause eliminates from consideration any promises made beforehand related to her employment under the agreement.

---

[7] Upon review of the parties' briefs and their case citations, they appear in agreement that Pennsylvania law should apply in this case.  I agree.

*1.   Defendant's argument that Carroll Lacked Authority Fails*

Ms. Qamar attempts to overcome the controlling terms of the written agreement and its integration clause by disputing its validity in several respects.  First, Qamar argues that Mr. Carroll lacked the authority to enter into the written employment agreement, and that the agreement is therefore invalid.  Even assuming that Carroll did not have actual authority to effectuate the written employment agreement without inclusion of the terms outlined by Bokhari,[8] it is clear as a matter of law that Carroll at least had apparent authority to effectuate employment agreements for FSB.  "Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted."  *Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 410 (Pa. 1968).  Apparent authority thus flows from acts of the principal, but is viewed from the lens of what the other party should reasonably know.  *See Hartley v. United Mine Workers of Am., Robena Local Union No. 6321,* 113 A.2d 239, 247 (Pa. 1955); Restatement (Second) of Agency § 49 (1958).

Several facts reinforce Carroll's apparent authority to bind FSB here. Notably, Carroll served in the role of Chief Financial Officer, a managerial role that generally carries a great deal of authority, and according to Plaintiffs' allegations, Bokhari represented that Carroll was in charge of memorializing written contracts.  Compl. ¶¶12, 60-61.  The fact that Qamar signed the employment agreement offered by Carroll reinforces the reasonableness of Carroll's apparent authority..  Compl. ¶¶ 71-72.  Any lack of actual authority on Carroll's part would not render the contact invalid.

---

[8] To support their claim that Carroll did not have actual authority, Plaintiffs plead that Carroll's scope of authority was limited to solely receiving instructions from Bokhari and memorializing agreements reached between Defendants and employees as directed by Bokhari.  Compl. ¶¶ 11-12; Bokhari Decl. ¶¶ 4-5. Further, Plaintiffs plead that neither FSD nor Bokhari provided Carroll with authority to disregard the directions of Bokhari with respect to Qamar's employment agreement.  Compl. ¶ 62; Bokhari Decl. ¶ 5.

       *2. Ms. Qamar's contract was not signed under economic duress*

Qamar also disputes that the contract is valid on the ground that she signed it under "economic duress." To establish economic duress, Qamar must show that first, "there exists such pressure of circumstances which compelled [her] to involuntarily or against h[er] will execute an agreement which results in economic loss," and second, that as the injured party, she "does not have an immediate legal remedy." *Litten v. Jonathan Logan, Inc.,* 286 A.2d 274, 282 (Pa. Super. Ct. 1971). Here, Plaintiffs plead that Qamar suffered duress when Carroll threatened that if she did not sign the employment agreement, her employment would be terminated. Compl. ¶71.

As a general rule, a plaintiff's fear of losing her job is not enough on its own to constitute economic duress. "Duress exists whenever one person, *by the unlawful act of another*, is induced [to sign a contract against their will]." *Harasco Corp v. Zlotnicki,* 779 F.2d 906, 911 (3d Cir. 1985) (quoting *Litten*, 286 A.2d at 917) (emphasis in original). Although the alleged threatened termination was an act committed by Carroll, it was not unlawful under an at-will employment system where it is understood that employers are not obligated to hire employees on the terms requested by the potential employee. *See Harasco*, 779 F.2d at 911-12. The facts here fall short of *Litten*, which found economic duress where defendant put plaintiffs into such "an inextricable financial crisis that plaintiffs were compelled to sign the written contracts" because otherwise plaintiffs' corporation would have been bankrupted. 286 A.2d at 916-17.

The economic duress doctrine is most often applied in the cases of employment agreements when employees are forced to sign agreements in a compressed time period, without the opportunity to consult counsel. For example, in *Hopkins v. NewDay Fin, LLC*, the court found that where employees were forced to sign arbitration agreements in the span of just one hour and could not consult counsel, "circumstances [were] at least arguably coercive enough to constitute

duress under Pennsylvania law." 2008 WL 2654635 at *2, E.D. Pa. June 30, 2008 (review of the complaint, ECF 18 at 12, shows employees had one hour to review the arbitration agreements). Here, Plaintiffs have failed to plead that Qamar signed the agreement during a compressed period of time, and in fact, the Complaint alleges that there were "several rounds of negotiations," before Qamar signed the employment agreement. Compl. ¶69. Significantly, during these negotiations, Bokhari – with whom it appears Qamar was allied – was still employed as FSD's Chairman and Chief Executive Officer. To the extent Carroll was violating the instructions given to him, Qamar had recourse with Bokhari as CEO, which further undermines her duress argument. Moreover, the Complaint reveals Ms. Qamar to be a sophisticated, well-paid executive who advocated strongly for her own interest, thereby weighing against a finding of economic duress.

Defendants correctly assert that even if I did find economic duress, under Pennsylvania law, "[a] contract formed under economic duress is voidable, not void." *Universal Atl. Sys. v. Honeywell Int'l, Inc*., 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019) (citing *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp*., 364 A.2d 470, 476 (Pa. Super. Ct. 1976)). A party that does not immediately repudiate the contract, but instead "'accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract,'" loses the opportunity to void the contract. *Id.* (quoting *Nat'l Auto Brokers Corp*., 364 A.2d at 476). Qamar did not repudiate the contract, but instead signed the contract in early April 2021 and received at least some of its benefits in her new role as Senior Vice President of the R&D Division until her resignation six weeks later. Compl. ¶¶ 72, 89.

C.  Plaintiffs' Claims for Promissory Estoppel, Fraud and Unjust Enrichment Fail

As an alternative to their theory that an oral agreement governed the terms of Qamar's and Brennan's employment, both Plaintiffs plead several quasi-contract theories include promissory estoppel, fraud, and unjust enrichment.

As a threshold matter, Plaintiffs' promissory estoppel claims[9] fail because promissory estoppel is properly invoked "where there is no enforceable agreement between the parties because the agreement is not supported by consideration." *Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000).   Even by Plaintiffs' own logic, Brennan and Qamar entered into valid contracts, i.e. the oral contracts.[10]  Because of the presence of the binding, written contracts, this claim fails.

Plaintiffs' claims for unjust enrichment also fail as a matter of law because the doctrine of unjust enrichment applies "only to situations where there is no legal contract."  *See Durham Terrace, Inc. v. Hellertown Borough Authority*, 148 A.2d 899, 904 (Pa. 1959); *see also Van Orman v. Am. Ins. Co*., 680 F.2d 301, 310 (3d Cir. 1982) ("[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties.").  Both Plaintiffs plead the existence of an enforceable contract, rendering unjust enrichment inapplicable.[11]

Plaintiffs' unjust enrichment claims also fail because they cannot show that FSD Pharma "either wrongfully secured or passively received a benefit that would be unconscionable for [the

---

[9] Plaintiffs pled detrimental reliance and promissory estoppel.  Defendants correctly assert that Pennsylvania does not recognize separate causes of action for detrimental reliance and promissory estoppel. *See Travers v. Cameron Cty Sch. Dist*., 544 A.2d 547, 550 (Pa. Cmwlth. Ct. 1988). Therefore, I consider only Plaintiffs' promissory estoppel claims.

[10] Qamar's promissory estoppel claims also fails because she has not and cannot demonstrate that (1) FSD Pharma's alleged misrepresentation of the severance provision should "have reasonably [been] expected to induce action or forbearance" in light of the later written integration, (2) that Qamar "actually took action or refrained from taking action in reliance on the promise," or (3) that "injustice can be avoided only by enforcing the promise."  *Crouse*, 745 A.2d at 610.

[11] In some cases, unjust enrichment can be alternative theory of recovery.  I do not view the facts here as presenting such a situation.

company] to retain." *Kenney v. Am. Board of Internal Med*, 412 F.Supp.3d 530, 551-52 (E.D. Pa. 2019); *see Vacula v. Chapman*, 230 A.3d 431, 437 (Pa. Super. Ct. 2020) ("The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."). Both plaintiffs continued to receive a salary and in fact received raises following their negotiations with Bokhari. Whatever disagreements may exist as to the adequacy of their compensation, Plaintiffs have not pleaded unconscionable conduct warranting equitable relief.

Both Plaintiffs' also plead fraud. Ms. Qamar's fraud claim fails because even if Carroll misrepresented that he would prepare a contract memorializing the oral contract and failed to do so, Plaintiffs cannot prove "justifiable reliance on [Carroll's] misrepresentation; and [that the]… resulting injury [was] proximately caused by the reliance," which are two of the necessary elements to prove fraud. *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002). At the time that Qamar signed the written employment contract, she knew both that the terms of the oral contract, including the severance agreement, were not included within the written contract, and that the written contract contained an integration clause. Therefore, at the time she signed the contract, she could not have been relying on Carroll's earlier statement that the agreed-upon terms would be included therein. Moreover, it is not justifiable for Qamar, a sophisticated party who signed a contract with an integration clause, to rely on earlier agreed-to terms that were not included in the contract that she signed.

As to Mr. Brennan's claim for fraud, as pleaded, it falls below the standard set forth in Rule 8 of the Federal Rules of Civil Procedure and will be dismissed without prejudice. If this case is returned by a Canadian court, he will be required to plead it with more specificity.

D. Qamar's Claim for Severance under the Pennsylvania Wage Payment and Collection Law Fails and Brennan's Claim May Survive

The Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.* establishes a right to enforce an employer's payment of wages and compensation including severance payments. *See Denton v. Silver Stream Nursing and Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). As the WPCL only creates a right to enforce an employer's legal obligations, and here, there is no legal obligation beyond that specified in the written contract Ms. Qamar signed, her claims under WPCL. are barred.

As to Mr. Brennan, the WPCL claim survives. If a Canadian court, or a jury in this case if it returns here, find an enforceable promise of a severance payment, Mr. Brennan may have rights under the WPCL.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted. Plaintiff Qamar's claims are dismissed with prejudice. Plaintiff Brennan's claims are dismissed without prejudice on *forum non conveniens* grounds, conditioned upon an Ontario court hearing his claim that there was an oral modification of the contract. An appropriate order follows.

        /s/ Gerald Austin McHugh
United States District Judge

16